## KIENTZ *v.* KIENTZ.

### Opinion delivered June 3, 1912.

1. DIVORCE—HUSBAND AND WIFE AS WITNESSES.—While the husband and wife are both competent to testify in divorce proceedings between them, a decree of divorce will not be granted upon the uncorroborated testimony or admissions of either party. (Page 384.)

2. SAME—CRUELTY.—Profane and abusive language employed by a husband toward his wife will not constitute legal cruelty where it does not appear that her health was impaired or her condition rendered intolerable. (Page 384.)

3. SAME—ACTION FOR ALIMONY.—A decree denying a divorce to a wife living apart from her husband was not erroneous in failing to provide alimony for her, since, if entitled thereto, she may in the future prosecute an independent action for alimony. (Page 387.)

4. HUSBAND AND WIFE—RIGHT OF WIFE TO MAINTENANCE.—A husband is bound to support and maintain his wife, though they live separately, if such separation is not due to her fault. (Page 388.)

Appeal from Jefferson Chancery Court; *John M. Elliott* Chancellor; affirmed.

*Coleman & Gantt,* for appellant.

1. Under the testimony appellant is entitled to a divorce either under the second or third clause of the fifth subdivision of section 2672, Kirby's Digest; but, under the modern rule, actual personal violence or an apprehension of it is not essential to bring a case within the terms of a statute permitting a divorce for cruelty. Any misconduct which tends to impair health, or creates an apprehension of bodily, injury, is cruelty, though no personal violence is inflicted. 9 A. & E. Enc. Law, 788; 30 Gratt. (Va.), 307; 60 W. Va. 9; 6 Ind. 105; 43 N. W. 616; 50 *Id.* 979; 47 Pac. 101; 132 S. W. 379; 128 *Id.* 218; 124 N. W. 544; 106 Pac. 126; 100 *Id.* 321; 110 S. W. 652; 144 *Id.* 68; 4 Nev. 395; 76 Ga. 319; 67 *Id.* 771; 21 Col. 16; 64 N. W. 561; 144 S. W. 68, 73. There is no law which justifies a man in choking or using force upon his wife for any purpose. 21 Cyc. 1150; 115 Ga. 578; 41 S. E. 993; 18 S. W. 9.

The charge contained in the cross complaint and the publishing of it the world without proof to sustain it was such an act of cruelty and indignity as entitles appellant to a divorce. 14 Cyc. 606; 97 Ark. 125, 130.

2. The law does not require that appellant be entirely

without fault. 9 Ark. 507; 44 Ark. 429. But the testimony does not establish fault on her part. There is no competent testimony whatever of misconduct on her part. Neither the uncorroborated testimony of appellee nor the alleged admissions of appellant would be sufficient. Kirby's Dig., § 2677; 54 Ark. 20.

*Taylor & Jones,* for appellee.

1. The finding of the chancellor that neither party was entitled to relief, each being equally to blame, is sustained by the evidence, and should not be disturbed. The finding of a chancellor is strongly persuasive. 97 Ark. 130; 9 Ark. 517. It will not be disturbed unless against the clear preponderance of the evidence.

2. A wife can not establish any claim against her husband founded on her own violation of conjugal duty. 9 Ark. 517.

FRAUENTHAL, J. This is a suit for divorce brought by the wife upon the statutory grounds that the husband was guilty of such cruel treatment as to endanger her life and offered such indignities to her is to render her condition intolerable. The husband denied each allegation of the complaint made against him, and by cross complaint charged conduct upon the part of the wife from which adultery might be inferred, and sought a divorce upon that ground. A great volume of testimony was taken by both parties relative to these charges and the countercharge, and upon a final hearing of the case the chancellor dismissed both the complaint and cross complaint. From the decree thus rendered, the plaintiff alone has appealed.

The parties were reared in the State of Ohio, the plaintiff at Deleware and the defendant at Cardington. They were married at Cleveland in October, 1901, and about six months after their marriage moved to Pine Bluff. During their married life, the defendant was employed upon a monthly salary, and maintained his wife and himself in a condition suitable to the sphere in life in which they moved. He provided as well for his wife as his financial circumstances would permit, and never gave her just cause for complaint of failure to do all within his financial means to serve her needs and wants. During the first year or two of their married life, they lived

happily together, and no trouble appears to have arisen to mar their peace until she heard that he had been gambling. When she heard this, she remonstrated with him, and she testified that he then cursed her. She stated that he continued to gamble from time to time; that he neglected her on Sundays by remaining from home; that he became irritable, and would curse on a very slight provocation, and oftentimes without any provocation. She claims that he not only cursed her but also the servants without any reasonable cause, and that this continued for several years, and until their separation in May, 1911. She does not claim, however, that he ever laid a heavy hand upon her or ever threatened to do her personal injury until in May, 1911, when she claims he forced her to write the note hereinafter referred to; and thereupon she left him. Her testimony does not go to the point of showing that his alleged neglect of her was studied, or that his alleged cursing and abusive language evinced any settled hatred of her. On the other hand, the defendant denied that he had ever cursed his wife, or that he had ever used abusive words or epithets to her. He testified that she made no complaint of any cursing or abuse upon his part until in March, 1911, when a different domestic trouble arose. He claims that he at that time overheard a conversation between his wife and a young lady who was boarding with them in which she stated that she was receiving letters from a married man in Pine Bluff, who was their family physician. He testified that on the following day he intercepted an anonymous letter in the handwriting of this physician, couched in endearing terms and addressed to his wife. He stated that when he confronted his wife with this letter she at first denied any knowledge relative to it, and then admitted that said physician had become enamoured of her and had written letters to her. This the wife denied, and claimed that the letter was concocted by the defendant in conspiracy with his brothers to blackmail this physician. In a day or two thereafter the plaintiff left for her home in Ohio, where she remained about six weeks. The defendant testified that, shortly after her return, he surprised her while writing a note to the physician, which he took from her by force. This the wife denied, and she testified that her husband had compelled her to write this note.

Shortly afterwards she again left for her home in Ohio, and thereupon instituted this suit for divorce in July, 1911.

It would serve no useful purpose to detail the testimony relative to these charges or to discuss the circumstances surrounding them in order to show with whom the truth may rest. The testimony relative to the cursing and indignities done and offered by the defendant is largely that of the plaintiff; and the testimony as to the authenticity of the letter he claims to have intercepted and of the motive or cause of the wife writing the note, is largely that of the defendant. The testimony of these parties as to these matters is in absolute conflict. While the husband and wife are both competent to testify in divorce proceedings between them, yet it has been held that a decree of divorce will not be granted upon the uncorroborated testimony or admissions of either party. *Rie* v. *Rie*, 34 Ark. 40; *Kurtz* v. *Kurtz*, 38 Ark. 119; *Brown* v. *Brown*, 38 Ark. 324; *Scarborough* v. *Scarborough*, 54 Ark. 20.

The testimony of the plaintiff relative to the use of profane language by defendant and his cursing is corroborated to some extent by other witnesses, and the testimony of the defendant that he did not curse or abuse his wife in any manner is supported to some extent by other witnesses with whom they lived for some time during their married life. But, with whichever party the truth as to this question of fact may rest, it clearly appears from the testimony that the plaintiff's health was in nowise impaired by any mental suffering she may have endured from this alleged misconduct of the defendant, and her condition was not thereby rendered unbearable. Her testimony shows that his curses and profanity rendered her unhappy; but it does not show that this made living with him intolerable. On the contrary, she testified that he often apologized for his cursing and misconduct, and begged her forgiveness; she continued to live with him without any complaint made to any one of this alleged misconduct until in March, 1911, when the defendant claimed that he had intercepted the letter alleged to have been written to her.

The testimony of the defendant relative to the interception of this letter and the confession of his wife that she had received letters from the physician is corroborated by his two brothers. But, even if the contention of defendant relative

to this is true, we do not think that it is sufficient to prove any act of adultery on the part of plaintiff. At the most, it only proves that, through his neglect to manifest for his wife that deep affection and love which he evinced for her in his early married days, and by inattention to her pleasures and her pastimes, she permitted another to show her some attention and probably evidence of affection, and began probably to entertain some reciprocal feeling of that nature. This was an act of indiscretion upon her part, but, however great this indiscretion may have been, we can not find from the testimony that it amounted to anything further. We are of the opinion, from a careful reading of the testimony, that this was the extent of the acts of omission and of commission on the part of these two. Upon the one part, there was neglect of and inattention to the wife, coupled with profane and abusive language which caused the wife great unhappiness, but which does not evince in the husband a settled hatred towards the wife or a rendering of her condition intolerable. On the other part, there were acts of indiscretion, at the most, done by the wife, which probably caused some gossip, but which did not result in any incriminating deed.

In the case of *Rose* v. *Rose*, 9 Ark. 507, it was held that the indignities to the person rendering the condition of the complaining spouse intolerable did not require the party to show that she lived in a state of danger or in apprehension of personal violence in order to constitute ground for divorce. It was there said that the personal indignities which constituted sufficient ground for divorce included "rudeness, vulgarity, unmerited reproach, haughtiness, contempt, contumely, studied neglect, intentional incivility, injury, manifest disdain, abusive language, malignant ridicule and every other plain manifestation of settled hatred, alienation and estrangement." But later this court said in the case of *Kurtz* v. *Kurtz*, 38 Ark. 119, that in applying this rule "the chancellor should act with great caution to avoid the gradual approach, by imperceptible steps, to the practice of holding all matrimonial bickerings by which parties may render each other unhappy to be valid grounds of divorce. Where there are no fixed and well-defined barriers of principle, it is difficult to limit the encroachment of precedents setting in one direction.

Each so nearly supports the next that before one is aware the bounds of reason are passed." In order to constitute cruel treatment, which our law recognizes as ground for divorce, there must be proof of wilfulness or malice on the part of the offending spouse, and the effect of that treatment must be to impair or threaten the impairment of the complaining party's health or such as to cause mental suffering sufficient to make the condition of the complaining party intolerable. Mere incompatibility of temperament or want of congeniality and the consequent quarrels causing unhappiness are not sufficient to constitute that cruelty which, under our statute, will justify divorce. The marriage state can not be considered as one of convenience, but it is one which has been entered into "for better or for worse." and must continue for life unless sundered for the grounds named in the statute justifying its dissolution, which must be proved by clear evidence. As is said in the case of *Cate* v. *Cate*, 53 Ark. 484: "It must be shown at least that there is something that makes cohabitation unsafe to move the courts to interfere." There must be such ill-treatment as to destroy the peace of mind and happiness of the injured party, who is without fault, and thereby to make life with the offending party under such treatment intolerable. *Haley* v. *Haley*, 44 Ark. 429; *Brown* v. *Brown, supra*; *Malone* v. *Malone*, 76 Ark. 28. A false charge of infidelity, especially if made by the husband against the wife, resulting in mental suffering to her, may constitute this character of cruelty, especially when accompanied by other wrongful conduct on the part of the husband; but it must appear that such charge has no foundation in fact, and that it has had the effect to blight the happiness and destroy the peace of the one so wrongfully accused. In the case at bar, the chancellor dismissed both the complaint and the cross complaint. He did not specifically set forth his findings of fact, but he necessarily found that the charges made by each party against the other were not sustained by the evidence, or that both were equally at fault. He must have found also, we think, that the defendant did not maliciously and falsely concoct the charge that the letter had been intercepted by him, written by another man in endearing terms to his wife, and that he did obtain from his wife a note written by her to this person.

The testimony upon this matter, however, is conflicting. The findings of the chancellor as to questions of fact are ordinarily persuasive on this court, and upon an issue of this character, where the chancellor is in all probability better acquainted with the parties and the witnesses and the circumstances surrounding them, his finding should be all the more persuasive. We are of the opinion, however, from the evidence that this conduct of the plaintiff was not considered by the defendant as proof of infidelity, but rather as an act of indiscretion, for, after he had intercepted the letter and charged his wife with this wrongful conduct, he accompanied her from Pine Bluff as far as Memphis on her trip to Ohio, and agreed to endeavor to secure a transfer in his business connection to some place other than Pine Bluff and to move with his wife to such city. After she left him the second time, he wrote to her in June or July, 1911, a number of letters. These were written in affectionate terms, and in none of them did he upbraid her with her alleged misconduct, or even suggest anything relative to the charge that she had written letters to or received them from any other man. To these letters from the husband the wife promptly replied, and their correspondence continued up to the time of the filing of the complaint in this case, as if no trouble existed between them. From a consideration of the entire testimony, we are unable to find that there is any settled hatred existing upon the part of either of these parties towards the other. We are of opinion that the alleged cruel treatment of the husband and the alleged indignities offered by him did not cause the wife such mental suffering as to impair her health or to make intolerable her living with him; that her alleged conduct in permitting her vanity to be flattered by the attentions of another man was not deemed so serious by the husband as to make him believe that she had been unfaithful, but was looked upon by him rather as acts of indiscretion; that if the lives of these two have been marked by unhappiness, it has been caused rather by mutual faults than by the sole fault of the one or of the other. Under these circumstances, we are of the opinion that the chancellor did not err in the findings which he made or the decree which he rendered.

It is urged that, although the court refused to grant to

plaintiff a decree of divorce, it should have made some provision for her maintenance. The plaintiff has, however, the right at any time in the future to prosecute an action for alimony if she is entitled to it. Kirby's Digest, § 2675; *Wood v. Wood*, 54 Ark. 172. By this decree that right is not concluded. By this decree it is determined only that neither of these parties under the evidence is entitled to a divorce. From that evidence it would appear that their separation at present is due to their mutual faults, and that in all probability there are no insurmountable obstacles to prevent these parties living together. It is the duty of the husband to support and maintain his wife, even though they may live separate and apart, if such separation does not result through her fault. If the plaintiff shall in the future manifest a *bona fide* intention to return to and live with her husband, and such overture for reconciliation is refused, then she will be entitled to maintain an action for alimony. *McConnell* v. *McConnell*, 98 Ark. 193.

The decree is accordingly affirmed.