## CHURCH *v.* JONES.

### Opinion delivered January 26, 1925.

1. SET-OFF AND COUNTERCLAIM—EFFECT OF FILING COUNTERCLAIM.—
   Under Crawford & Moses' Dig., §§ 1195, 6236, an answer alleging
   a counterclaim is in the nature of a complaint in a cross-action
   against the plaintiff, and entitles defendant to any relief consist-
   ent with the evidence and the issue.

2. TRIAL—CONFLICT IN INSTRUCTIONS.—Where defendant admitted
   the execution of the note sued on, but claimed that there was an
   agreement that there should be a subsequent settlement, and
   sought affirmative relief on a counterclaim, but plaintiff con-
   tended that the note was in full settlement, instructions placing
   the burden on plaintiff to show, as a defense to the counter-
   claim, that the note was in full settlement, and on defendant
   to establish his counterclaim, were not conflicting.

Appeal from Clay Circuit Court, Eastern District;
*G. E. Keck,* Judge; affirmed.

#### STATEMENT OF FACTS.

This suit was commenced before a justice of the
peace by George Church against E. M. Jones, to recover
$133.70, balance due on a promissory note.

Jones admitted the execution of the note and that
the amount sued for was due and unpaid, but set up
facts which constituted a counterclaim, and asked for
affirmative relief against Church for the balance due
him. The justice of the peace found that there was a
balance due Jones on his counterclaim, and rendered
judgment against Church in his favor. Church appealed
to the circuit court. There G. W. Church was the prin-
cipal witness for himself. According to his testimony,
on the 16th day of August, 1922, he executed a bill of
sale to Jones to his undivided interest in a crop of cot-
ton which had been grown by them in Clay County,
Arkansas. The agreement provided that Jones was to
pay for the picking of a part of the cotton and that the
balance of it was to be picked by the person who had
grown it. The contract also provided that Jones agreed
to pay certain notes which he had signed as surety for
Church. The note sued on was one of the notes referred

to in the bill of sale. Jones paid the other note described in the bill of sale. The note sued on was introduced in evidence, and the indorsement on the back showed that the amount sued for was due and unpaid.

On cross-examination Church admitted that he and Jones had made a partnership crop of cotton, and that this was the cotton referred to in the bill of sale. According to his testimony, they had a full settlement of their partnership affairs at the time the bill of sale and the note sued on were executed, and the notes described in the bill of sale represented the balance due him by Jones in the settlement of their partnership affairs.

C. F. Brennecke, cashier of the Bank of Greenway, and a notary public, was a witness for the defendant. According to his testimony, he prepared the bill of sale in question at the request of both Church and Jones. It was definitely understood between Church and Jones that it was not a final settlement, but was just a partial settlement. The reason was that Jones did not know exactly the amount of his claim against Church, and it was agreed between them that they would get their books together and have a final settlement later, and whoever owned the other would pay him then. The partial settlement was made and the two notes executed by Jones to Church in order to enable Church to borrow some money. They so explained the transaction to the witness at the time.

According to the testimony of Jones, he made a contract with Church in the spring of 1922, for the cultivation of some land in partnership. They rented some land, and share-cropped it. Jones was to furnish the team and tools and Church the feed. At the time the bill of sale was executed, Church wanted to borrow some money, and the bill of sale and notes in question were executed to enable him to use Jones' name in that way. They did not have their books at the time, and did not make a final settlement. It was a partial settlement, and each party agreed that they would have a final settlement, and then whoever was in debt to the other would pay him.

The jury returned a verdict for Jones against Church in excess of the amount of the note sued on, in the sum of $50, and from the judgment rendered Church has duly prosecuted an appeal to this court.

*Arthur Sneed,* for appellant.

*Ward & Ward,* for appellee.

HART, J., (after stating the facts). The court told the jury that it was the contention of Church that, at the time of the execution of the note sued on, he and Jones had a full and complete settlement of their accounts. That, on the other hand, Jones admitted the execution of the note, and that the amount sued for had not been paid; but he claimed that Church owed him more than the amount of the note, and denied that they had had a full settlement of their accounts at the time the note was executed. In other instructions the court submitted the respective theories of the parties to the jury.

The court gave to the jury instructions Nos. 3 and 4, which read as follows: "The burden of proof is on defendant to show by a preponderance of the evidence that the plaintiff owes him on his counterclaim, so in this case your verdict will be for the plaintiff for the amount of the note, less any credit you may find, from a preponderance of the evidence, to be due on said note, and, if you find that the plaintiff owes the defendant more than the amount of said note sued on, you will find for the defendant against the plaintiff for the amount you may find from the evidence the plaintiff owes the defendant in excess of the amount of the said note.

"No. 4. The burden of proof is on the party alleging things to be true, to establish it by preponderance of the evidence; therefore the plaintiff in this case says that there was a full settlement at the time of the execution of this note; they allege that to be true, therefore the burden would be on them to establish that to be true by a preponderance of the evidence."

It is the contention of counsel for appellant that the instructions are contradictory, and, for that reason, the judgment must be reversed. We cannot agree with

counsel in this contention. Section 1195 of Crawford & Moses' Digest defines a counterclaim as any cause of action in favor of the defendant against the plaintiff.

Section 6236 of the Digest provides that, in any case where a set-off or counterclaim has been presented, the defendant shall have the right of proceeding to the trial of his claim, although the plaintiff may have dismissed his action or failed to appear. This section was a part of our Civil Code, and § 1195, defining a counterclaim, was passed by the Legislature of 1917. Thus it will be seen that the pleading of a counterclaim, with the demand for relief, is, in effect, the institution of a cross-action for a recovery under the facts set up in the counterclaim. Although the matters set up in the counterclaim constitute a defense to plaintiff's cause of action, it is also of a nature that entitles the defendant to affirmative relief, so that he might have brought an action on it in the first place. In short, pleading the counterclaim in this suit was, in effect, the instituting of a cross-action, and the part of the answer alleging it is in the nature of a complaint by the defendant against the plaintiff. As such, the defendant is entitled upon it to any relief consistent with the case made and embraced within the issue. This is the effect of our decision in *Coats* v. *Milner*, 134 Ark. 311. In that case the court said that the manifest purpose of the Legislature in defining a counterclaim was to permit persons who have gone to law to settle, in a single suit, all matters in dispute between them, whether the respective causes of action grow out of the same or different contracts or whether they arise upon contract or arise out of some tort.

In the case before us, Jones admitted the execution of the note sued on and that there was a balance due upon the note in the amount sued for. Jones said that he executed the note in order to accommodate Church, and that it was expressly understood that afterwards there should be a settlement of their affairs, and that

the one owing the other would pay him.  Jones sought affirmative relief against Church.

In this view of the matter we do not think that there was any necessary conflict between the two instructions. The only disputed question of fact was whether or not Jones was entitled to recover on his counterclaim. The court placed the burden upon him in this respect in instruction No. 3; and, in instruction No. 4, intended to tell the jury that, if the plaintiff relied upon the fact that there had been a full settlement at the time the note was executed, as a defense to the counterclaim, the burden was on him to show it.  This instruction evidently had reference to the trial of the issue on the counterclaim, and, if the defendant thought otherwise, he should have made a specific objection to the instruction.  The court had already told the jury that Jones admitted the execution of the note, and that the amount sued on was due and unpaid, and he only defended the suit and asked for affirmative relief by way of counterclaim upon the theory that there was a balance due him in the settlement of their partnership affairs, and the note was executed for the accommodation of Church, and that he was entitled to an affirmative judgment against Church.

It is well settled in this State that the court will only reverse a judgment for prejudicial errors, and we are of the opinion that, in the absence of a specific objection, it cannot be said that the instruction was necessarily prejudicial.

It follows that the judgment will be affirmed.