SETTLES *v.* SETTLES.

4-7928                                    195 S. W. 2d 59

Opinion delivered June 17, 1946.

*Claude B. Brinton,* for appellant.

*E. D. McGowan,* for appellee.

MINOR W. MILLWEE, Justice. Appellant, J. E. Settles, a native of Jonesboro, Arkansas, enlisted in the

U. S. Navy in September, 1925. In September, 1935, he married appellee in New London, Connecticut, and the parties lived together until June or July, 1945. On October 9, 1945, appellant filed suit for divorce in the Chancery Court of Craighead county on the statutory ground that appellee had offered such indignities to his person as to render his condition in life intolerable.

Appellee filed an answer on November 7, 1945, in which she specifically denied the charge of indignities and alleged that she had been a faithful and deserving wife, and asked that the complaint be dismissed. The cause was submitted to the court upon the pleadings and the depositions of appellant, his mother, and appellee. This appeal is prosecuted from a decree dismissing the action because of the insufficiency of the evidence to sustain the allegations of the complaint.

Appellant testified that his wife "continually embarrassed me with my friends" during their married life; that the first occasion was in the home of her uncle in Weymouth, Massachusetts, shortly after their marriage when "my wife embarrassed me so in front of her relations that we argued and I felt obliged to leave the house." He also testified that appellee was jealous and "continually, without cause, accused me of being untrue to her with other women." Three instances were mentioned by appellant as occurring in the presence of their mutual friends in Tacoma, Washington, in March, June and July, 1945, in which he says "my wife accused me of infidelity."

The mother of appellant testified that the parties had visited in her home at Jonesboro on four different occasions during their married life for a day or two at a time. She testified that appellee was fractious toward everybody and more particularly toward appellant. "If he wanted to go anywhere, she never wanted him to go. She just wasn't satisfied in other words—just didn't want him to do anything." She also testified that appellee was always accusing appellant of going with other women.

244

Appellee testified that she last saw appellant on June 15, 1945, at Jonesboro, Arkansas, where they were visiting. They were then residing in Tacoma, Washington, where appellant was stationed, but appellant was given a new assignment and, at his suggestion, she went to the home of her parents in New London, Connecticut. There was no separation because of any trouble between the parties at that time. Appellant had been trying to get her to divorce him for more than a year, but was never serious about it until he got into trouble with another woman at Tacoma, Washington. He told her all about the trouble, but she was willing to forget and forgive and did not want a divorce. She stoutly denied that she had argued with appellant or accused him of infidelity before their friends in Washington. She also testified that their married life was pleasant and congenial prior to the difficulty with the other woman.

Appellee introduced five letters written to her by appellant from his ship between the dates of July 12, 1945, and September 30, 1945. In these letters, appellant confesses his unfaithfulness to appellee and his ardent love for another. Appellee is repeatedly implored to divorce him and is held entirely blameless for appellant's own state of unhappiness. Appellee testified that she ignored the requests in these letters that she seek a divorce upon the advice of a navy chaplain.

Each party charged the other with the practice of contraception. While appellant testified that appellee indulged in the practice without his consent, there is little to indicate that he wanted children. Appellee testified positively that he did not want children and never wanted to discuss such personal affairs.

In the case of *Bell* v. *Bell*, 105 Ark. 194, 150 S. W. 1031, this court said: "It is for the court to determine whether or not the alleged offending spouse has been guilty of acts or conduct amounting to rudeness, contempt, studied neglect or open insult, and whether such conduct and acts have been pursued so habitually and to such an extent as to render the condition of the complain-

ing party so intolerable as to justify the annulment of the marriage bonds. This determination must be based upon facts testified to by witnesses, and not upon beliefs or conclusions of the witnesses. It is essential, therefore, that proof should be made of specific acts and language showing the rudeness, contempt and indignities complained of. . . . The mere want of congeniality and the consequent quarrels resulting therefrom are not sufficient to constitute that cruelty or those indignities which under our statute will justify a divorce.'' To the same effect, see *Dunn* v. *Dunn*, 114 Ark. 516, 170 S. W. 234; *Meffert* v. *Meffert*, 118 Ark. 582, 177 S. W. 1; and *Walldren* v. *Walldren,* 187 Ark. 1077, 63 S. W. 2d 845.

This court has also repeatedly held that, to sustain the charge of indignities there must be evidence from which settled hate and estrangement on the part of the offending spouse may be deduced. In the case of *Welborn* v. *Welborn,* 189 Ark. 1063, 76 S. W. 2d 98, it was said: ''Moreover, appellee's testimony, giving it its most charitable view, relates no facts or circumstances establishing indignities under our statute. True, he testified to certain 'fussing,' 'blow-ups,' etc., and other conclusions, but he does not undertake to detail the facts which superinduced these conclusions. Not only this, but appellee's testimony falls far short of the rule announced by us many, many times, to the effect that to entitle a complaining spouse to a divorce for indignities, the conduct of the offending spouse must be of such nature as to connote settled hate and a plain manifestation of alienation and estrangement, and must have been followed habitually and continually through such period of time as to show settled hate and malevolence. *Rose* v. *Rose,* 9 Ark. 507; *Preas* v. *Preas,* 188 Ark. 854, 67 S. W. 2d 1013.''

The testimony offered by appellant in support of his general charge of indignities does not measure up to that standard of sufficiency which is required by our cases on the subject. The statements of appellant that appellee embarrassed him with his friends and accused him of in-

fidelity are in the nature of conclusions. There is no corroboration of his testimony relating to the three instances in which he says his wife accused him of infidelity in the state of Washington. Appellee flatly denies that she made such accusations. However, if such charges were made, the letters of appellant tend to show that the accusations were neither false nor groundless. In Schouler Divorce Manual by Warren, § 104, p. 133, it is said: "To constitute indignities, accusations of infidelity must not only be false, but must have been made without foundation and with the intent to wound, and when made in good faith and on the basis of doubts and suspicions reasonably born of appearances, they are not to be treated as indignities." This principle was approved by this court in the case of *Kientz v. Kientz,* 104 Ark. 381, 149 S. W. 86.

Appellant testified in rebuttal that he made false statements concerning his own misconduct in his letters because of an agreement with appellee that she would use the letters to obtain a divorce from him. It is insisted that the letters should not be considered under these circumstances and the case of *Marshak v. Marshak,* 115 Ark. 51, 170 S. W. 567, L. R. A. 1915E 161, Ann. Cas. 1916E 206, is relied upon to sustain this contention. In that case the parties wrote letters to each other after institution of the divorce suit for the apparent purpose of each obtaining advantage over the other in the trial of the case, and the court said that it did not regard the letters of any importance.

The letters involved in the instant case were all written prior to institution of the suit for divorce and for the avowed purpose, now advanced by appellant, of perpetrating a fraud upon some court. If we accept appellant's testimony concerning the admissions made in his letters as true, this certainly does not tend to improve his standing in a court of equity. As this court said in *Meffert v. Meffert, supra:* "It is true of divorce cases, as in others, that a party must come into a court of equity with clean hands. Divorce laws are made to give relief to the innocent and not to the guilty."

Appellant also argues that appellee unintentionally corroborated the testimony of appellant when she testified that appellant had caused her much worry wondering where he was, what he was doing and whether he had told her the truth. While we do not construe this testimony as an admission of the truth of the charge of indignities made by appellant, this court has held that divorces are not granted upon the uncorroborated testimony of the party and the adverse party's admissions of the truth of the matters alleged as grounds therefor. *Rie* v. *Rie*, 34 Ark. 37; *Scarborough* v. *Scarborough*, 54 Ark. 20, 14 S. W. 1098; *Chappell* v. *Chappell*, 83 Ark. 533, 104 S. W. 203; *Shelton* v. *Shelton*, 102 Ark. 54, 143 S. W. 110.

In *Sutherland* v. *Sutherland*, 188 Ark. 955, 68 S. W. 2d 1022, this court, in an opinion by Chief Justice JOHNSON, said: "It should be distinctly kept in mind that marriage vows are solemnly assumed and should be sacredly kept. The interest of society demands that the bonds of wedlock should not be severed, except upon grounds prescribed by statute and established by testimony. One, two, or three trivial instances of petulance are entirely insufficient to establish indignities as defined by our statute.*"

The burden was upon appellant to prove the charge of indignities and to show that the conduct of appellee toward him had been such as to render his condition in life intolerable. The evidence adduced by appellant in an attempt to discharge this burden fails to establish that there was any condition of enduring alienation, estrangement or settled hate on the part of the appellee toward the appellant. The chancellor correctly so held, and the decree is accordingly affirmed.

---

* Pope's Dig., § 4381.