DISHEROON *v.* DISHEROON.

4-8157           201 S. W. 2d 17

Opinion delivered April 14, 1947.

*H. G. Leathers* and *Shouse & Shouse,* for appellant.

*Festus O. Butt,* for appellee.

HOLT, J. March 4, 1946, appellee sued appellant, Leveta Disheroon, for divorce on the alleged grounds of cruel treatment, such as to render his life intolerable (5th subdivision of § 4381, Pope's Digest). He also asked for the care and custody of their only child at that time — a boy about two and one-half years old, named Donald Joe. Appellant entered a general denial, prayed that appellee's complaint be dismissed for want of equity and for all proper and equitable relief.

When the cause came on for trial, August 26, 1946, a second child, a boy, had been born to appellant, which was then about two months old. The trial court granted a divorce. The care and custody of the older child, Donald, was divided between the parties, the father to have its custody for six months of each year, and the mother for the remaining six months, with visitation privileges to each. The care and custody of the second child was given to the mother with the privilege to the father to

visit the child at reasonable times. The appellant, mother, was awarded $5 per week for the support of the younger child, and $10 per month additional for the older child while in her custody, but was not awarded anything for her own support.

From the decree comes this appeal.

For reversal, appellant says: "(1) The evidence is wholly insufficient to support decree for divorce; (2) appellant should have, during his tender years, the exclusive custody of Donald Joe subject to visitations of the father; (3) the allowances for the support of the infants are inadequate; (4) appellant should have some provisions for her own support, and (5) appellant was entitled to reasonable allowance for attorney fees."

After a careful review of the record before us, we have reached the conclusion that all of appellant's contentions must be sustained.

## 1.

Briefly stated, the facts are: The parties to this action were married October 24, 1942, each at the time being eighteen years of age. They lived in various places in and near Green Forest, Ark., until appellee was inducted into the Naval Service, November 9, 1943. Appellee, after his induction and shortly after the birth of their first baby, was located on the west coast. He returned home on furlough and at his wife's request took her and the baby with him to the home of his uncle at Glenns Ferry, Idaho. Later, Mrs. Disheroon took the baby to California where they lived with her sister. Both appellant and her sister secured employment. Their working hours were different and they were able to care for the baby. While thus employed, Mrs. Disheroon suffered a nervous breakdown and spent some time in a hospital there and later was transferred to the State Hospital in Little Rock, and after a complete recovery, she was discharged from this institution September 12, 1945, returned to Green Forest, where she was soon joined by appellee, her husband, and as above noted, they separated February 23, 1946. The characters of these two

young people are unquestioned. Appellee says in his brief: "Happily no suggestion has entered this case reflecting even remotely on the character of either party. Either or both may be foolish or immature, but the unanimous voice of every witness giving expression is that she was—is—'a good girl'; that he was—and is— in the words of Rev. Powell, 'an exceptionally good boy'."

The effect of appellee's own testimony was that his young wife was discontented, fretful and hard to please; that she neglected their little boy, sometimes quarreled with him, and on one occasion after he had lingered in a pool room, playing pool with his brother, longer than she thought proper, upbraided and slapped him when he came to their truck in which she was waiting. He further testified that after they resumed their marital relations following her nervous breakdown, she was not good to him, was a careless housekeeper; that there was another expected baby at the time; that she wanted a car and other things which he was unable to buy for her; that he didn't think that she helped him as much as she should; that she caused him to move from place to place, and "She was an expectant mother, and I knew that, I knew we were expecting a baby. She wanted to go with me (meaning the west coast). . . . I think any married man would rather have his wife here at home. . . . I am not alleging her nervous breakdown as a sole ground of divorce, but I think it should be considered as part of the grounds for divorce."

On cross-examination, there is this testimony from appellee: "Q. What is its name (meaning the second child)? A. I don't know. Q. You have not cared enough to find out? A. I have not found out. Q. Have you seen it? A. Yes, I have seen it once. Q. When was that?, A. At her place over there. Q. Did you make a trip to see it? A. Yes, they wrote and asked me to bring Donnie over to see it. Q. Did you see it? A. Yes, I did. Q. This baby, you don't know its name? A. No. Q. You never asked her or anyone what its name was? A. No. Q. What are you working at now? A. Helping my dad in the canning factory, hauling tomatoes. Q. You are an ex-service

man? A. Yes. Q. Drawing anything from the Government? A. Yes, self-employment. Q. How much? A. $100 a month. Q. Did you make application for this self-employment, listing your wife and child as dependents? A. I did. Q. Have you contributed anything to their support since the last term of court here? A. What I was required to, I did. Q. It is your intention to continue to support them? A. If the court requires me to, yes: Q. And if the court does not require you to support them? A. I think that I should have custody if I support them. Q. In case you do not have custody, you don't intend to support them? A. I do not feel like I should have to."

The parents of the parties are good people and do not appear to have encouraged their separation. Appellee lives with his father and stepmother and proposes to take Donald into their home. Appellant and the younger child now live with her father.

Appellant testified that she always tried to make a good housekeeper, that she continued to love appellee and still loves him; that she had lost some affection for him because of the manner in which he had treated her, but that if he would do right, she would continue to love him and make him a good wife; that for the sake of the children they ought to live together.

We think it clear from the above and the other testimony which we do not think it necessary to abstract here, that appellee has fallen far short of producing testimony of that character required to secure a divorce on the grounds of cruel treatment. As we read and analyze the evidence, the effect of it amounts to nothing more than petty quarrels and misunderstandings, not infrequent among even happily married couples, and certainly it does not rise to the dignity and of that kind of evidence constituting cruel treatment as contemplated by the statute and in the numerous decisions from this court.

This court in *Kientz* v. *Kientz,* 104 Ark. 381, 149 S. W. 86, said: "In order to constitute cruel treatment, which our law recognizes as ground for divorce, there must be proof of willfulness or malice on the part of the offend-

ing spouse, and the effect of that treatment must be to impair or threaten the impairment of the complaining party's health or such as to cause mental suffering sufficient to make the condition of the complaining party intolerable. Mere incompatibility of temperament or want of congeniality and the consequent quarrels causing unhappiness are not sufficient to constitute that cruelty which, under our statute, will justify divorce. The marriage state can not be considered as one of convenience, but it is one which has been entered into 'for better or for worse,' and must continue for life unless sundered for the grounds named in the statute justifying its dissolution, which must be proved by clear evidence. As is said in the case of *Cate* v. *Cate,* 53 Ark. 484, 14 S. W. 675: 'It must be shown at least that there is something that makes cohabitation unsafe to move the courts to interfere,' " and in *Meffert* v. *Meffert,* 118 Ark. 582, 177 S. W. 1, Judge HART, speaking for the court, said:

"Unhappiness sufficient to render the condition of both parties intolerable may arise from the mutual neglect of the conjugal duties; but when the parties are thus at fault the remedy must be sought by them, not in the courts, but in the reformation of their conduct. The remedy is in their own hands, and, until it has been tried without effect by the party complaining, the court will not give effect to the complaint. Until this home remedy has been tested and failed, the condition of each may be said to be due to his or her own acts, and one must bear the consequences of his own misconduct. See, also, *Arnold* v. *Arnold,* 115 Ark. 32, 170 S. W. 486.

"So it may be said that the remedy of absolute divorce contemplated by this clause of our statute is for evils which are unavoidable and unendurable and which can not be relieved by any exertions of the party seeking the aid of the courts."

We think the small differences that have arisen between these two young people can be easily adjusted by them, and with the proper effort and encouragement on the part of the parents, this fine little family should, and can be held together.

2.

As indicated, we think it was also error to divide the custody of the older child. These two children, especially at the present time, and during their tender years, need a mother's care, guidance and attention, and she should have their care and custody, with the right of the father to visitation at all reasonable times. Our first and primary consideration is the best interest of these children, or as sometimes expressed, what would be least harmful to them in the circumstances. No reason is shown why these children should be separated.

This court in *Gibson* v. *Gibson,* 156 Ark. 30, 245 S. W. 32, on this question, said: "These children are now of the ages, respectively, between four and five years and between two and three years, the younger one of the two being a girl. At this age children should have a mother's care and attention, and the proof does not justify a decree depriving them of that care and transferring their custody to the father. The reason for this conclusion is given in many decisions of this court, and it is unnecessary now to repeat. *Beene* v. *Beene,* 64 Ark. 518, 43 S. W. 968; *Meffert* v. *Meffert,* 118 Ark. 582, 177 S. W. 1. These established principles are peculiarly applicable to the matter of the custody of the younger child, who is a girl, and, even if the boy were old enough to justify removal from his mother, there is no good reason shown why the children should be separated," and in the recent case of *McCourtney* v. *McCourtney,* 205 Ark. 111, 168 S. W. 2d 200, we said:

"Without reviewing the conflicting testimony, we announce our conclusion to be that the welfare and best interests of the children, which is, of course, the primary consideration, require that they be kept together, and, in view of the fact that the children are all girls and the youngest only 10 years old, we think the chancellor properly awarded the custody of all the children to their mother."

3 and 4.

On the question of support, it appears that appellee receives $100 a month from the Government, and is work-

ing and earning additional money. It is the duty of a father to support and provide a home for his family. The appellant is now living with her father and, obviously, the care of these two children will require most, if not all, of her time. It appears that she has very little property and is not earning anything. In the circumstances, we think appellant should be allowed $30 per month for the support of the two children, and in addition $20 for her own support, or a total of $50 per month.

### 5.

Appellant is also entitled to a reasonable attorney's fee which the trial court will award to her upon the remand of this cause.

For the errors indicated, the decree is reversed, and the cause remanded with directions to enter a decree not inconsistent with this opinion. Appellee is to pay all costs in both courts.