HENRY SMILEY *v.* FANN P. SMILEY

5-5089                                      448 S. W. 2d 642

Opinion delivered January 12, 1970

*W. G. Dinning, Jr.,* and *Daggett & Daggett,* for appellant.

*Anderson & Anderson,* for appellee.

JOHN A. FOGLEMAN, Justice. The parties hereto were participants in a marriage ceremony on October 29, 1965, when appellant was 83 years of age and appellee was 42. Appellant, at that time, had acquired and still owned an unencumbered 600-acre farm, a pickup truck, at least $65,000 in bank accounts and $10,000 in government bonds and an undetermined amount of cash. He did not then, or at the time of trial, owe any debts. His previous wife had died during the preceding year. He had no children. He stated that he was unable to care for himself or drive an automobile because of bad health. Appellee had acquired three children, some furniture, a house in Kansas City, debts which included a balance on this house, and a tangled marital status. Appellee left appellant at least three times prior to the final separation in May, 1966, at which time she states that her condition in life became intolerable. In November, 1966, she instituted this action for divorce. The grounds alleged were those commonly known as indignities to the person. Specifically, the complaint contained allegations that appellant had on numerous occasions physically abused, harmed and threatened her and had treated her with rudeness, contempt, studied neglect, all habitually and systematically pursued, until her condition in life became intolerable. A decree granting appellee a divorce and awarding appellee one-third of appellant's personal property and one-third of his real estate during her natural life, and ordering the real estate sold to accomplish the property division, prompted this appeal. The decree was granted for rudeness, contempt and studied neglect and abuse of appellee by appellant, rendering her condition in life intolerable. Ap-

pellant's motion for default judgment on a counterclaim for annulment of the marriage was denied.

Three grounds for reversal are argued. The first challenges the sufficiency of the evidence to support the court's decree. The other two are based upon assertions of error in relation to denial of appellant's counterclaim for annulment. Appellant says that the court should have granted a default judgment on his counterclaim, and asserts that the annulment should have been granted on the basis of the evidence adduced. We shall first dispose of the grounds argued with reference to the annulment because agreement with appellant's position would result in a determination that there was no marriage to be dissolved by divorce.

We find no error in the denial of the default judgment. It is appellant's position that appellee defaulted by her failure to file an answer to his "cross complaint" for annulment. The chancellor ruled that no answer was required because no service was had upon appellee as a "cross-defendant." We disagree with the basis for this holding. Appellant's pleading labeled "Amendment to Answer and Cross Complaint" sought an annulment of his marriage to appellee because of her previous marriage to William Turner Jackson II subsisting since December, 1949. Nearly 11 months after the filing of this pleading, appellant moved for default judgment because of the failure of appellant to file any responsive pleading. Even though appellant consistently denominates his pleading as a cross complaint, it is actually a counterclaim in that appellant, the defendant, asserted a cause of action for affirmative relief against appellee, the plaintiff. Regardless of the label put upon this pleading, it was a counterclaim rather than a cross complaint. Ark. Stat. Ann. § 27-1123 (Repl. 1962). See *Church* v. *Jones*, 167 Ark. 326, 329, 268 S. W. 7. No service of summons on appellee-plaintiff on this pleading was necessary. *Evans* v. *Davis*, 146 Ark. 595, 226 S. W. 520; *Pillow* v. *Sentelle*, 49 Ark. 430, 5 S. W. 783. The record in-

cludes a certificate by appellant's attorney that this pleading was served upon one of appellee's attorneys prior to its filing. This action met the requirements for service of such a pleading upon a plaintiff in an action. Ark. Stat. Ann. § 27-1137 (Repl. 1962). See also Ark. Stat. Ann. §§ 27-361, 362, 364 (Supp. 1967). An answer or reply to this pleading was required within 20 days. Ark. Stat. Ann. § 27-1137 (Repl. 1962). Consequently, appellee was in default. In the ordinary proceeding, this omission would have constituted an admission of the allegations of fact asserted, but not of the entitlement of the pleader to the relief sought. *Johnson v. Pierce,* 12 Ark. 599. It might also have entitled the pleader to judgment. See *Walden v. Metzler,* 227 Ark. 782, 301 S. W. 2d 439; *Utley v. Heckinger,* 235 Ark. 780, 362 S. W. 2d 13. Yet, in cases involving the validity of a marriage, the public interest requires that no decree voiding a marriage be entered upon default without proof of grounds for that action. While we have not had occasion to apply this rule in the case of annulment, we have always done so in divorce cases.[1] The reason for this rule has as much application to the former as to the latter. The following language from our opinion in *Welch v. Welch,* 16 Ark. 527 is illustrative:

> "But had this service been regular, the decree *pro confesso,* was not sufficient, without evidence to sustain the allegations of the complainant's bill, to authorize the court to decree her the relief it did, from the bonds of matrimony; because the marriage contracts in the language of one of the judges of this court, in the case of *Viser* vs. *Bartrand,* 14 Ark., at p. 282, 'unlike ordinary contracts of business, is one which the public, as well as the individuals contracting, is interested in preserving unbroken, unless for such causes as are specially set forth in the statute, and these causes must in fact

---

[1] Ark. Stat. Ann. § 34-1207 (Repl. 1962) is only declaratory of the rule recognized by this court when there was no such statute. See *Viser v. Bertrand,* 14 Ark. 267 at 278, 282.

exist, and must be shown to exist by evidence. No admissions of the defendant, whether by answer or by failure to answer, will supercede the necessity of proof of the truth of the allegations in the bill.' And in the same case another one of the judges said (*id.*, p. 278): 'The marital tie, although a civil contract, in the eye of the law, differs from all other civil contracts in one essential particular. The parties can never annul it by means either direct or indirect. Hence, the inflexibile rule of law that the confession of either party are wholly incompetent as evidence. Nor does our statute, which directs that "like process and proceedings shall be had in divorce cases, (*Digest,* chap. 58, p. 402, sec. 3,) as are had in other cases on the equity side of the court," or in any other of its directions or provisions, in any way alter or modify this vital rule of evidence, touching the dissolution of the marital tie. Parties, by their mutual consent, if of proper age and capacity to receive the sanction of the law, may make the marriage tie, but they can never break it, according to the rules of law, and the sound morals upon which they rest, by any express confessions, much less those implied by a default to answer a bill for divorce.' "

It can readily be seen that the effect of all established safeguards against collusive divorce would be undermined if we permitted a decree annulling a marriage upon default by a defendant without proof of grounds. We should not permit this result by setting a precedent through our action in this case which is certainly not collusive.

Thus, it was incumbent upon appellant to produce evidence to support his counterclaim in order to establish his entitlement to the relief he sought. Not only did he fail to do so, but he made no objection when appellee, in order to controvert appellant's grounds for annulment, offered a certified copy of a decree of the Chan-

cery Court of Phillips County, Arkansas, declaring the marriage of appellee to the father of at least two of her three children void ab initio. This decree was granted because Jackson had, at the time of this marriage, a living wife, from whom he had not been divorced. We find no reversible error in the denial of a default decree of annulment.

In spite of this appellant argues that an annulment should have been granted him because (1) appellee was not divorced from one Michael D. Ryan at the time of her marriage to appellant, (2) appellee was married to William T. Jackson II at the time of her marriage to appellant and (3) the marriage was procured by fraud on the part of appellee in concealing and misrepresenting material facts relating to her previous marriages.[2] We find no merit in these contentions. Appellant's argument pertaining to the Ryan divorce is based upon a provision in that decree entered October 15, 1965, prohibiting the parties from contracting marriage until 60 days after the entry of the decree and another declaring that any such marriage should be null and void. This contention is premised upon the assumption that the divorce was conditional during the 60-day period, in reliance upon the language of Chapter 95, § 6269, General Statutes of Kansas, 1909. Appellant also relies upon cases in which this statute was interpreted to mean that a divorce decree was not final and did not operate as a dissolution of a marriage until the expiration of six months from the date of rendition of the decree. In 1964, § 60-1610, Kansas Stat. Ann. was enacted. While the earlier statute made it unlawful for a party to a divorce decree to remarry, the later statute simply requires that the decree contain a provision like that appearing in the Ryan decree. The language of the Kansas decree clearly does not make the divorce granted conditional nor does it postpone its effective date. While we find no spe-

[2]Nothing was said by appellant about one Henry Walker who was a "husband" acquired by appellee in 1957, according to her mother. The record abstracted discloses nothing else about this marriage.

cific holding by the Kansas court on the subject, the clear language of the latest Kansas statute makes the decree of divorce immediately effective but imposes upon the parties a personal restraint against remarriage during the statutory period. Such a prohibition has territorial effect only, and does not render a marriage solemnized in another state in conformity with its laws invalid, in the absence of any public policy of the state of the marriage domicile or of the marriage celebration against a marriage during such a period. *Loughran* v. *Loughran*, 292 U. S. 216, 54 S. Ct. 684 (1934). 78 L. Ed. 1219. No such policy has been declared in Arkansas and the marriage in question was a legal one under the laws of this state insofar as disclosed by the record here.

The fact that Jackson's decree of annulment of his marriage to appellee was applied for and rendered subsequent to the institution of the present proceeding does not entitle appellant to a decree of annulment. This decree, introduced without objection, contained a finding that Jackson was not divorced from one Ruby Fobs until three months after his purported marriage to appellee and that his legal wife was Erma Randle whom he married in 1956, rather than appellee whom he married in 1949 or Azalean Brown whom he married in 1964. If appellee's marriage to Jackson was bigamous it was void from its inception, and no decree of any court was required to declare it so. Ark. Stat. Ann. § 55-108 (1947). *Goset* v. *Goset*, 112 Ark. 47, 164 S. W. 759. See also *Bruno* v. *Bruno*, 221 Ark. 759, 256 S. W. 2d 341. Because of his failure to make any objection to the admission of the decree by the trial court appellant is in no position to complain here that this decree is not binding upon him, or that it should not have been admitted into evidence.

While appellant urges that we should presume that appellee's Jackson marriage was valid as a basis for annulment of the Smiley marriage, the prevailing presumption favors the subsequent marriage rather than

the prior one. *Miller* v. *Miller*, 237 Ark. 66, 371 S. W. 2d 511; *Blythe* v. *Blythe*, 241 Ark. 768, 410 S. W. 2d 379.

Appellant did not allege fraudulent procurement of his marriage to appellee in any of the pleadings filed by him. His present contention is based only on his own testimony that, in response to an inquiry by him, appellee told him that she was divorced. In view of our holding with reference to the marital ties of appellee to Ryan and Jackson, there was nó misrepresentation involved. Furthermore, it seems that this point was raised for the first time on this appeal.

We come now to consider the sufficiency of the evidence to support the decree of divorce. Appellee's testimony discloses: that appellant had failed to perform his promise to add more rooms to his brick, air-conditioned, two-bedroom house to accommodate her children; that he required her to leave her children at her mother's home, causing her to have to arise at 4:00 a.m. in order to prepare their breakfast and get them off to school; that he accused her of seeing men, fussed constantly over everything, cursed her daily, threw hot water on her while she was talking by telephone to a friend in Kansas City, hit her with a spittoon and ordered her out of the house on one occasion, accusing her of drinking bourbon. She doubted that on the several occasions that she left or was sent away she stayed away more than a total of one month out of the six between their marriage and separation. Although she claimed that she required medical attention because of appellant's conduct, her physician did not testify. It is doubtful to say the least, that this testimony, given its strongest probative force, constitutes clear evidence of those unavoidable and unendurable evils incapable of relief by reasonable exertion, or the settled hate and enduring alienation and estrangement, necessary to constitute the grounds on which the decree was based. See *Poe* v. *Poe*, 149 Ark. 62, 231 S. W. 198; *Calhoon* v. *Calhoon*, 209 Ark. 80, 189 S. W. 2d 644; *Kientz* v. *Kientz*, 104 Ark. 381, 149 S. W.

86; *Disheroon* v. *Disheroon,* 211 Ark. 519, 201 S. W. 2d 17; *Preas* v. *Preas,* 188 Ark. 854, 67 S. W. 2d 1013; *Welborn* v. *Welborn,* 189 Ark. 1063, 76 S. W. 2d 98; *Settles* v. *Settles,* 210 Ark. 242, 195 S. W. 2d 59.

Even if we resolved any doubt in favor of the chancellor's holding as to the sufficiency of appellee's testimony, we find a lack of the necessary corroboration. Although we have recognized that corroboration may be relatively or comparatively slight where it is evident that there is no collusion between the parties, the testimony here is not even sufficient to pass this test. Her mother testified that appellee would be extremely upset when she came to the mother's home, that because her daughter was taking too many pills and could hardly talk she brought her home once and that appellee's children lived with her because there was no room for them at appellant's house, in spite of his saying that he was going to build them a living room, bedroom and bath. Appellee's brother drove up to the Smiley house one day and heard Henry Smiley cursing. Smiley told this witness that his sister sure was mean and had wanted him to do a whole lot of work and that he was not going to fix the house as she wanted. Another brother said that appellee was "dull headed" and didn't know where she was when their mother brought her home. This testimony certainly is not corroborative of the cause of separation or of a settled hate, alienation or estrangement.

The evidence was not sufficient to warrant the granting of a divorce after such a brief period. The decree is reversed and the cause dismissed.

HARRIS, C. J., and BYRD, J., concur.