Smith *v.* Smith.

4-8893 223 S. W. 2d 776

Opinion delivered October 24, 1949.

*C. T. Cotham,* for appellant.

*Otis H. Nixon,* for appellee.

Ed. F. McFaddin, Justice. This is an appeal by the wife from a chancery decree granting her husband a divorce on the ground of indignities. A careful study of the record discloses that the husband did not offer evidence of *any specific acts of indignities;* so the decree must be reversed because of the insufficiency of the evidence. This opinion could well stop at this juncture, except for the fact that we are reversing the Chancery Court, and therefore feel constrained to discuss the evidence and the controlling authorities in order to clarify the result that we have reached.

This suit was filed in September, 1946, at a time when the plaintiff (appellee), Charles Smith, was in Italy in the Armed Forces of the United States. It appears that the plaintiff completed one enlistment in the Army in the fall of 1945, and re-enlisted in the spring of 1946. The complaint alleged that the parties separated on December 1, 1945 ''because the defendant was guilty of such indignities towards him as to render his condition in life intolerable, in that she treated him with rudeness, contempt, studied neglect and open insult, habitually and systematically pursued.''

The plaintiff's deposition was taken before a Commissioned Officer of the U. S. Army (inferentially in Italy) on December 9, 1946. The only portion of the plaintiff's testimony even remotely bearing on the cause of the separation is as follows:

"Q. When did you and the defendant separate? A. We separated about the first day of December, 1945. Q. Where did the separation take place? A. The separation took place in Hot Springs, Arkansas. Q. What was the cause of the separation? A. She nagged and fussed at me all the time, and claimed that she had tuberculosis, a fact I knew nothing about; and when I was discharged from the Army I found her in fine shape and was unable to get along with her at all. She seemed to be interested only in getting all the money she could out of me. . . . Q. Was her conduct such as to render your condition in life intolerable? A. It certainly was."
Thus the plaintiff's testimony was a mere generalization, without detailing any specific facts to support the alleged grounds for divorce.

The only other witness for the plaintiff was his mother, a lady 71 years of age and a resident of Mississippi, whose testimony was in the form of a deposition taken in December, 1947. She testified that in *May,* 1945, she went to Hot Springs to visit her daughter-in-law, and that on such visit she observed that a man called "Happy" came to see the defendant (appellant); and that "Happy" and the defendant went driving in a car. The foregoing is the only specific evidence by this witness seeking to cast any reflection on the defendant; and this evidence related to an incident alleged to have occurred more than six months before the separation, and not even claimed by the plaintiff to have been the cause of the separation.

We have repeatedly held in divorce cases that proof must be made of specific acts and conduct showing the indignities relied on in order that the court may properly determine whether the proof is sufficient to support the claimed ground for divorce;[1] that testimony which

---

[1] *Walldren* v. *Walldren*, 187 Ark. 1077, 63 S. W. 2d 845.

amounts to no more than mere inference and conclusions of the witness should be rejected;[2] and that a decree will not be granted upon the uncorroborated testimony of one of the parties.[3] In Settles v. Settles, 210 Ark. 242, 195 S.W. 2d 59 we reiterated the holdings as to the quantum and quantity of the evidence essential to obtain a divorce decree on the ground of indignities. Appellee's evidence in the case at bar does not measure up to the requirements of our holdings.

Furthermore, the facts here are strikingly similar to the facts in the Waldren case,[4] for here, as in that case, the plaintiff wrote to his wife after the separation; and such letters show that the plaintiff's desire to be relieved of his marital vows, was not because of defendant's fault, but because the plaintiff wanted to be ''free.'' While in Italy, the plaintiff wrote the defendant several letters, one of them reading in part:

''I think I owe you some kind of explanation of my reasons for wanting the divorce. I hope you take this the right way, as I am now laying all my cards on the table and doing something I have never needed to do before, asking for a chance at happiness. Not only asking but begging. First, as you know, I have never been satisfied with anything in my life. I can't help this, I'm just built that way. But now I have or rather want something that I am very much satisfied with and that is this girl in Florence. She means more to me than my life. I love her with every ounce of heart, body and soul. If I can't have her, I don't care what happens; and right now I am at the point of doing something drastic. This is why I'm asking you to either get a divorce, or do not oppose the suit I have started. I am begging for this, Joe, not only begging for a divorce but my life also. Never before in my life have I written a letter like this, but never before have I felt the same way I am feeling now.''

[2] *Dunn* v. *Dunn*, 114 Ark. 516, 170 S. W. 234.

[3] *Alston* v. *Alston*, 189 Ark. 525, 74 S. W. 2d 239.

[4] *Walldren* v. *Walldren*, 187 Ark. 1077, 63 S. W. 2d 845.

As before stated, there is in this record no evidence that the plaintiff had grounds for divorce: rather, he wanted a divorce in order that he might marry another.

. The decree of the Chancery Court is reversed, and cause is remanded.