## Scales *v*. Scales.

### Opinion delivered January 19, 1925.

1. DIVORCE—INDIGNITIES TO THE PERSON.—To warrant a divorce under the statute, indignities to the person must be habitual and systematically pursued to the extent of rendering intolerable the life of the one upon whom they are imposed.

2. DIVORCE—UNCORROBORATED TESTIMONY OF PARTY.—A divorce will not be granted upon the uncorroborated testimony of either party, even if admitted by the other.

3. DIVORCE—INDIGNITIES—SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficient to sustain a finding that a wife offered such indignities to her husband's person as to warrant a divorce.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; affirmed.

STATEMENT OF FACTS.

On June 13, 1923, Annie Scales brought suit in equity against Joe Scales to obtain a divorce from him on the statutory ground that he had offered such indignities to her person as to render her condition in life intolerable.

On July 17, 1923, Joe Scales filed an answer in which he denied the allegations of ill treatment contained in the complaint of his wife, and also filed a cross-complaint in which he asked for a divorce from her on the same statutory ground. Annie Scales did not introduce any proof in support of her bill.

Joe Scales was a witness for himself. According to his testimony, he lived in Union County, Arkansas. His wife deserted him for the third time just before she filed the complaint in this case. The first time she deserted him she stayed away three months, and returned of her own free will. She begged him to take her back. Subsequent to this time their relations as husband and wife were not at all congenial, because of the fact that she exhibited a tendency to be quarrelsome, headstrong, and unwilling to give way to the most reasonable request that he might make of her. He always treated her as kindly and generously as he knew how, and always provided for her well, according to his financial circumstances, and never gave her any cause for the abuse that she heaped upon him. This treatment continued until the 4th day of June, 1923, at which time a discussion came up, and his wife was unable to control her temper. She swore and cursed at him, calling him a "God damn son of a bitch," and refused to stay all night at his home. He did not do anything at this time, except to make emphatic statements concerning his rights, and did not run her away or invite her to leave. Since she left, she has remained away of her own accord. His wife always took occasion, when they were with others, to humiliate and embarrass him, and exhibited a total disregard for his feelings or welfare. He had always been diligent in keeping a decent home for her and at all times had peacefully tried to settle the quarrels that came up.

Hazel Gray, a girl eleven years old, was a witness for the defendant. According to her testimony, she was at their house on the night of the 4th of June, 1923. We quote from her testimony the following:

"Q. Will you tell what occurred between Mr. Scales and Mrs. Scales? A. Well, a man had been boarding there, and he paid them six dollars. Q. Did Mr. and Mrs. Scales have a fuss that night? A. I don't know whether they did or not. It was about a board bill, and he said it was six dollars in all, and she said she was going to get the other three dollars next day. Q. Did she call him names? A. Yes, she called him that word. Q. What was it? A. She called him a son of a bitch."

She further stated that Mrs. Annie Scales left there that night.

W. M. Ramsey was also a witness for the defendant. He lived one and a-quarter miles from Joe Scales. He had known Annie Scales since 1914 and Joe Scales all of his life. According to his testimony, she had left Joe Scales before the last separation took place. In 1914 he went to their house, and Annie Scales said something to her husband that caused the witness to notice her as being unpleasant, and he mentioned it to the husband. She was nagging him the first time he ever saw her. This impressed the witness that she was a woman who was not very congenial to live with. When she would get in company, she would try to throw it into him. She never missed a chance. The witness remembered the occasion when Mrs. Scales left her husband in June, 1923. His cook had bought an organ from Mrs. Scales, and Joe had told him to keep out the money to pay on it. The witness drove up to the Scales home on Sunday morning to carry a mule, and asked Mrs. Scales where Joe was. The latter was not at home, and the witness put up the mule. Mrs. Scales then went to the gate and asked the witness if he would pay her the money for the organ. She said that she was going away, and was not coming back. The witness asked her where she was

going, and she said that she was going to leave Joe. The witness told her that he was sorry about that. She said that they could not get along, and that she was going to leave. The witness advised her not to go; but she said she was going. She said the trouble came up about one Mr. Jim Tom Barnett, who was boarding there. On Monday afternoon after that, possibly the following week, the witness was in his field, and, just about sundown, he and his boys heard some one roaring and cavorting at Joe Scales' house. The witness said to the boys, "Old lady Scales is raising sand with Joe." They stood there and listened several minutes until the noise was hushed. The witness could not hear Joe at all. He was about a quarter and a-half away from them. Mrs. Scales was raising some sand, but he could not tell what she said. He knew that she was talking to Joe Scales, and this was the same evening that she left him that night. She was cursing, but the exact words would be hard for the witness to say. The witness had lived as a neighbor to Joe Scales about thirty years, and had never heard him quarrel when he was in the presence of him and his wife. We quote from his testimony the following:

"Q. Have you heard her quarrel at him more than one time? A. Yes, I have. Q. Did she use vile language or abusive words? A. Well, you know how a woman can nag at you. She just crossed him on everything—would not agree with him on anything."

No cross-examination of Joe Scales and his witnesses was made by the attorney for Annie Scales. It appears from the certificate of the notary public that the depositions of these witnesses were taken on the 5th day of November, 1923, and that on the 6th day of November, 1923, a decree of divorce was granted Joe Scales on his cross-complaint.

The decree recites that Annie Scales refused to introduce testimony to support the allegations of her complaint, and refused to cross-examine the witnesses introduced by her husband.

The case is here on appeal.

*Oscar Barnett,* for appellant.

A divorce should not be granted upon the complaint of one party to a marriage and the admissions of the other. 240 S. W. 410; 102 Ark. 54; 104 Ark. 381; 122 Ark. 276. It was error to grant appellee a divorce without proof of his citizenship in this State for one year next before the bringing of the action. C. & M. Digest, § 3505; 128 Ark. 548.

*Goodwin & Goodwin,* for appellee.

The proof in the record is ample to establish the fact of residence in the State for the statutory period and longer. The chancellor's finding as to the facts in the case will not be disturbed unless there is a preponderance of the evidence against it. 149 S. W. 89.

HART, J., (after stating the facts). It is the well settled rule of this court that the indignities offered which entitle one to a divorce, under the statute, must be habitual and systematically pursued to an extent that would render intolerable the life of the one upon whom the indignities are imposed. *Simpkins* v. *Simpkins,* 136 Ark. 588; *Pryor* v. *Pryor,* 151 Ark. 150; and *Davis* v. *Davis,* 163 Ark. 263.

It is also well settled by these decisions that divorces will not be granted upon the uncorroborated testimony of either party, even if admitted to be true by the other party. While we have not copied the testimony in full, we have set it out in detail in the language of the witnesses as it appears in the record. Upon a consideration of this testimony, a majority of the court is of the opinion that the chancellor was warranted in rendering a decree for the husband on his cross-complaint.

According to the testimony of the husband, his wife had left him twice before, and he had treated her as well as his condition in life would allow. According to his testimony and that of Hazel Graves, his wife called him a son of a bitch on the night she left him. This occurred on Monday night, the 4th of June, 1923.

According to the testimony of William Ramsey, he was at their house on the Sunday before, and Mrs. Scales told him then that she was going to leave her husband. She said the trouble came up about one Mr. Jim Tom Barnett, who was boarding with them.

It is also inferable from the testimony of Hazel Graves that they quarreled about a man who had been boarding there, and who had paid them six dollars. According to the testimony of Ramsey, Mrs. Scales was continually nagging her husband, and when they would get in company "she would try to throw it into him." He stated further that she crossed him in everything and would not agree with him in anything.

The majority of the court is of the opinion that this testimony, when taken in connection with her cursing him, shows that the nagging and cursing her husband was of the same character as her conduct on the night she left. They think that the language used on that night was indicative of the language she used towards her husband when Ramsey said that she would "nag him" and "throw it into him." Therefore they think that the chancellor was justified in granting a decree of divorce to the husband on the statutory ground alleged in his cross-complaint.

On the other hand, Judge WOOD and the writer think that this corroborative testimony was too indefinite, and that the witness should have been required to state what was meant by "nagging" and "throwing it into her husband." We think they meant petty fault-finding. These expressions and the further expression that "she crossed him in everything and would not agree with him in anything," amounted to no more than an expression of opinion on the part of the witness. Hence we think that the chancellor erred in granting the divorce.

It results, however, from the views of the majority of the court that the decision of the chancellor was correct, and it will therefore be affirmed.