BELL *v.* BELL.

Opinion delivered March 11, 1929.

*S. A. Jones, Fred A. Isgrig* and *Philip McNemer*, for appellant.

*Floyd Terral,* for appellee.

MEHAFFY, J. This suit was brought by the appellee, based on the fifth subdivision of § 3500 of Crawford & Moses' Digest. That section reads as follows:

"Where either party shall be addicted to habitual drunkenness for the space of one year, or shall be guilty of such cruel and barbarous treatment as to endanger the life of the other, or shall offer such indignities to the person of the other as shall render his or her condition intolerable."

The plaintiff alleged that he and the defendant were married on April 1, 1927, and that soon thereafter she began a systematic course of rudeness, studied neglect, unmerited reproach, open insult and abusive language toward him that renderd his condition in life intolerable, and that he left her on the first of December, 1927.

The defendant filed an answer and cross-complaint, and in her cross-complaint she alleged that the plaintiff, Ezekiel Bell, on October 1, 1927, began a systematic course of rudeness, studied neglect, unmerited reproach, open insult and abusive language towards her that rendered her condition in life intolerable.

It therefore appears from the pleadings that the condition in life of each of them was rendered intolerable by the wrongful conduct of the other. The evidence is not very voluminous, but the testimony of the plaintiff tended to show that the parties did not get along well together; that the defendant would refuse to get up of a morning and cook breakfast for the plaintiff, and that plaintiff would have to come back in the middle of the morning and get his breakfast. She stated to one witness that if that man fooled with her she was going to kill him. She also charged him with going to see his former wife. The testimony of plaintiff also tends to show that she would curse, use bad words, and that she would fuss at his dead wife's

children. Finally one of the children, a girl, got so tired of her fussing at her so much, she went to stay with her sisters. One of his children, Giles Williams, was 18 years of age; she did not make up his bed, and did not want to feed him, and nagged the plaintiff all the time about this. She had a son by a former marriage, who was 24 years of age, and lived with her. She would get mad when her husband would go out, and continue to fuss at him until he left. She would give them breakfast about half past nine o'clock and get dinner late, and have nothing but cold lunches for supper. When one of his children died, he asked Mose Scott to come over to his house and make a coffin for the child, and Scott went over there with his tools and lumber and began to work on the porch, and she told him, in the presence of plaintiff, "You get that devilish thing away from here and carry it out to the barn or somewheres. You are not going to build that here." The testimony also shows that she said something about shooting plaintiff.

This testimony was, some of it, contradicted by the testimony offered by the defendant, and it is purely a question of fact.

Appellant calls attention to the fact that this court said in a recent cause:

"It is obvious that the court cannot grant a divorce because the parties have become dissatisfied with the marriage yoke. In such cases, parties must, by mutual concessions, make the yoke lighter." *Griffin* v. *Griffin,* 166 Ark. 85, 265 S. W. 352.

But the court also said, in the same case, in the paragraph immediately following the one above quoted:

"On the other hand, constant abuse, studied neglect, and humiliating insults and annoyances, which indicate contempt and hatred by the offending party, amount to such indignities to the person as to render his or her condition in life intolerable within the meaning of the statute. Tested by this rule, it cannot be said that the finding of

the chancellor is against the preponderance of the evidence."

. Appellant then quotes from the opinion written by Mr. Justice Wood in the case of *Davis* v. *Davis,* 163 Ark. 263, 259 S. W. 751. The quotation is quite lengthy, and is to the effect that the ease and frequency with which divorces are often obtained as a matter of expediency is a menace to orderly society, and in it lurks one of the dangers to the stability of our great republic; that one of the foundation pillars of our government is the sanctity of the marriage relation, etc. In the above case, written by Mr. Justice Wood and quoted from by appellant, it was also said, quoting from *Pryor* v. *Pryor,* 151 Ark. 150, 235 S. W. 410:

"Divorces are not granted upon the uncorroborated testimony of the parties and their admission of the truth of the matters alleged as grounds therefor."

It was also said in the above case:

"In conflicts between the two depositions (husband and wife) hers must be deemed of greater weight, because he seeks to obtain a divorce by his own testimony, and she attempts to defeat it by hers. He must establish alleged causes of divorce by corroborating evidence. In getting at the truth in relation to private scenes, quarrels and injuries between husband and wife, unwitnessed by others, it may be well to admit the testimony of the parties in divorce cases, but, because of the rule, founded on public policy, that a divorce will not be granted upon the unsupported testimony of the party seeking it, it necessarily follows that the greater weight must be given to the party opposing it, where their depositions conflict."

If there were no testimony in this case corroborating the plaintiff, then he would not be entitled to a divorce. As this court has already held, a divorce will not be granted to one on his uncorroborated testimony, but the testimony of plaintiff in this case is corroborated by other witnesses. And, while their testimony is not very strong, it does corroborate his testimony, so that the rule announced in the cases referred to does not apply, or rather

the facts in the cases are different from the facts in the present case. In the Davis case there was no corroboration.

Appellant also calls attention to *Collins* v. *Collins*, 176 Ark. 12, 28 S. W. (2d) 41. In that case the court said: ''The testimony is not very satisfactory on the question of divorce, but, after considering the whole of the testimony carefully and the situation and condition of the parties, we are of the opinion that the preponderance of the evidence entitles the wife to a divorce. It is perfectly apparent from the testimony of both of them that they were continually quarreling with each other, and that there was no likelihood of their becoming reconciled to each other. Each of the parties had children by a former marriage, and there was no hope of them ever living together again. Hence we are of the opinion that a preponderance of the evidence will sustain a decree granting the plaintiff, Alice Collins, a divorce from the defendant, F. D. Collins, on the statutory ground of indignities rendering her condition in life intolerable.''

In the present case it may be said that the testimony is not very satisfactory, but, as in the Collins case, each of the parties had been married before and had children by former marriages, and there is no hope of them ever living together again.

Another case to which appellant calls attention and upon which he relies is the case of. *Scales* v. *Scales*, 167 Ark. 298, 268 S. W. 9. That case also holds that the rule is well settled that divorces will not be granted upon the uncorroborated testimony of either party, even if admitted to be true by the other party. In the case last referred to the testimony showed that they were quarreling very much, as in this case, and, while the testimony in this case is not very satisfactory, there was some corroboration of the testimony of the plaintiff.

While indignities mentioned in the statute are somewhat similar to cruelty, mentioned in another part of the section, still it has been held by all the courts that indignities include conduct which is not within the defi-

nition of cruelty as a ground for divorce. Although it is said that indignities must amount to a species of mental cruelty, it is also true that what acts constitute such indignities have not been defined, but that they depend upon the facts of each case. As was said in *Rose* v. *Rose,* 9 Ark. 507, they may consist of rudeness, vulgarity, unmerited reproach, haughtiness, contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule and every other plain manifestation of settled hate and estrangement.

There must be in every case, in order to entitle the complaining party to relief, proof of personal indignities. And not only must there be proof of that by the complaining party, but his testimony must be corroborated by other testimony tending to prove the indignities alleged. In other words, a divorce will not be granted to a party on his own testimony, however strong it might be, but it must have corroboration.

The testimony of the plaintiff, Ezekiel Bell, and the testimony of the defendant both have some corroboration, yet it was a question of fact, and the chancery court found the facts in favor of the appellee. We cannot say that the finding was against the preponderance of the evidence, and the decree is therefore affirmed.

Justices WOOD and HUMPHREYS, JJ., dissent.

DISSENTING OPINION.

HUMPHREYS, J. Appellee seeks this divorce from appellant for alleged indignities which rendered his condition in life intolerable. The proof introduced by him shows that during the time they lived together, being eight months, she occasionally quarreled at him for indulging in familiarities with his former wife, from whom he was divorced; also that during said period she had failed several times to get breakfast before nine o'clock, necessitating the return of his hands from the field to eat breakfast at that late hour; also that she refused to allow a carpenter to make a coffin on their front porch in which to bury one of his children, because she had always

heard that it was bad luck to make a coffin in the house. He testified that she was in the habit of cursing, but introduced no corroborating testimony on that point. She denied swearing, but admitted quarreling at him occasionally for keeping company with his divorced wife, and explained that she requested the carpenter to make the coffin in an outhouse.

She introduced proof to the effect that they lived together peaceably practically all the time except for an occasional quarrel over attention shown by him to his divorced wife, and that she faithfully performed all of her household duties, and, in addition, kept the account of the work done by his hands in the field.

During the time they resided together they occupied the same bed and slept together the night before he abandoned her. He left her without explanation, and after doing so offered to borrow the money and pay her $150 if she would consent for him to get a divorce. She declined this offer.

Even if all appellant and his witnesses testified to were true, the evidence does not approach the required rule announced by this court in order to obtain a divorce for indignities. The indignities entitling one to divorce must be habitually and systematically pursued by the party at fault. *Haley* v. *Haley*, 44 Ark. 429; *Simpkins* v. *Simpkins*, 136 Ark. 588, 207 S. W. 28. An occasional provoked quarrel or a failure to get breakfast on time once in a while does not entitle a husband to a divorce. If so, it would be easy for many undeserving husbands to put aside a good wife when he tired of her and wanted another.

In the opinion of the writer this case should be reversed, and remanded with instructions to dismiss appellee's complaint.

Mr. Justice Wood joins the writer in this view, and, for the reasons expressed, we dissent from the majority opinion.