Ross *v.* Ross.

4-8565                                                  213 S. W. 2d 360

Opinion delivered June 21, 1948.

Rehearing denied October 4, 1948.

*Edward J. Rubens* and *Hale & Fogleman,* for appellant.

*Dodd & Colvin,* for appellee.

HOLT, J. The parties here were married July 10, 1937, in Madison, Wisconsin. Appellee, Mayford C. Ross, filed the present suit for divorce in Arkansas February 21, 1947, alleging as a ground therefor separation without cohabitation for three consecutive years (subdivision 7, § 4381, Pope's Digest). On November 2, 1947, a decree was entered granting to appellee a divorce from appellant, in accordance with the prayer of his complaint.

This appeal is from that decree.

Appellant, for reversal, argues that the decree is against the preponderance of the evidence, and after a careful review of all the testimony, we have reached the conclusion that this contention must be sustained.

The record reflects that the present suit is the fifth attempt by appellee to secure a divorce from appellant. Appellee testified: "A. I originally instituted suit for divorce in Detroit, Michigan, but the decree was denied. This was in 1943. Since that time I have instituted three actions, exclusive of this one, in Crittenden county, Arkansas."

The cause comes to us for trial *de novo*.

The burden was on appellee to show by a preponderance of the evidence separation without cohabitation for three consecutive years. We held in *McClure* v. *McClure,* 205 Ark. 1032, 172 S. W. 2d 243, that the word "cohabitation" in the above section was used by the Legislature in its popular sense, and meant "sexual intercourse."

We said in *Bell* v. *Bell,* 179 Ark. 171, 14 S. W. 2d 551, (quoting with approval from *Pryor* v. *Pryor,* 151 Ark. 150, 235 S. W. 410): " 'Divorces are not granted upon the uncorroborated testimony of the parties and their admission of the truth of the matters alleged as grounds therefor.' It was also said in the above case: 'In conflicts between the two depositions (husband and wife) hers must be deemed of greater weight, because he seeks to obtain a divorce by his own testimony, and she attempts to defeat it by hers. He must establish alleged causes of divorce by corroborating evidence. In getting

at the truth in relation to private scenes, quarrels and injuries between husband and wife, unwitnessed by others, it may be well to admit the testimony of the parties in divorce cases, but, because of the rule, founded on public policy, that a divorce will not be granted upon the unsupported testimony of the party seeking it, it necessarily follows that the greater weight must be given to the party opposing it, where their depositions conflict."

The evidence was presented by depositions.

Appellant testified: "Q. Were you in the company of your husband, Mayford Charles Ross, in the fall of 1946? A. Yes, several times. Q. Did he call on you at your apartment? A. Yes. Q. Did you accompany him to dinner and to various places of amusement? A. Yes, several times. Q. While in your apartment, did you have sexual relations with your husband? A. Yes. Q. Did he ask you to grant him a divorce, and then state that you could live together as common law husband and wife? A. Yes."

Irene Galison testified on behalf of appellant: "Q. Were you in the company of the plaintiff and the defendant in the fall of 1946? A. Yes. Q. Did you see the plaintiff kiss, and otherwise display affection toward her? A. Yes. Did they come into your presence together? A. Yes."

Appellee contradicted the above testimony of appellant and Miss Galison, stoutly denying that he had intercourse with his wife at any time since 1942.

He further testified: "Q. How long did you live in Detroit during the year 1946? A. Approximately nine months. . . Q. During that week (meaning the week of June 9, 1946) above mentioned, did you phone Mrs. Ross three or four times? A. I do not recall the week of June 9th specifically, but I know that I never called her as much as three or four times during any one week. I did call her, however, on several occasions to try to persuade her to let the divorce go through without further contest. Q. Between June and November of 1946, did you not take Mrs. Ross out on several occasions and

accompany her to her home? A. I was in her company on three occasions during the nine months I was in Detroit, but I do not think that all three of the times were between June and November. I met her on one occasion at her suggestion, and on two occasions at my suggestion. The first time I met her at seven o'clock in the evening at the Bouche Cocktail Lounge which is near her apartment." During this meeting a friend of appellee was in the cocktail lounge at appellee's request without appellant's knowledge. Appellee testified that he did not take appellant to her apartment following this meeting.

A few weeks later, at appellee's suggestion, he again met his wife at another cocktail lounge near her apartment. This meeting, at 2:30 in the afternoon, lasted for about two hours. Appellee's friend was again present in the cocktail lounge without appellant's knowledge. Both parties had several cocktails and following the meeting, appellee secured a car and took appellant home to her apartment. He testified that he did not go in but left her at the door. His witness friend followed in another car.

Still on another occasion, he admitted meeting appellant at the apartment of one of appellant's friends, a man whose name he could not recall. There was also present on this occasion appellant's friend, Irene Galison. This meeting, he testified, was for the purpose of attempting to reconcile their differences and no unpleasantness occurred while there. "The girls had prepared some sandwiches in the kitchen and called to us to come on out to the kitchen, which we did, and ate the sandwiches." He then left the apartment. He testified that this was the last time he had seen appellant.

He further testified: "Q. Did you not, in the presence of the said Irene Galison, say that your wife was a good person and just as clean inside as out? A. I do not think I made any such statement, although I attempted never to belittle or ridicule her in the presence of her friends, and it is possible that I made this statement. Q. On one of your visits with your wife, did you not ask her to permit you to take a divorce and then suggest that after the divorce was granted, you would live with her as

746

common law husband and wife? A. I have never suggested anything remotely resembling that. She may conceivably have reference to the fact that I once told her that under no circumstances would I consider having any relations of any nature with her until after the divorce was granted because I certainly was not going to jeopardize the grounds upon which I was relying, which is three years continuous separation, by living with her or committing anything that would put any question of doubt that the separation had been broken."

We think the effect of this testimony of appellee demonstrates that he not only was willing to secure a collusive divorce, but also would not be averse to having sexual relations with appellant after the divorce was granted, and the force to be given to his testimony thereby materially weakened.

After a careful review of all the testimony and weighing it in the light of the rules above announced, we have reached the conclusion that appellee has failed to discharge the burden which rested upon him to show by corroborative evidence and a preponderance thereof, separation for three years without cohabitation.

For the error indicated, the decree is reversed, and the cause dismissed.