EDWARDS *v.* EDWARDS.

5-185

262 S. W. 2d 130

Opinion delivered November 16, 1953.

*Jim Merritt,* for appellant.

*Paul Johnson,* for appellee.

J. SEABORN HOLT, J. The parties here were married October 11, 1952, and separated October 30, 1952. November 18, appellant, Clara Edwards, brought suit for temporary separate maintenance and support, and pending hearing on the merits (without objections), the trial court awarded appellant $40.00 for each of the months of November and December, 1952, and set the cause for hearing on the merits for January 2, 1953. The cause was heard on January 2, and when all the evidence was completed, the court, without objection, allowed each of the parties to amend their pleadings and ask for an absolute divorce. This appeal followed.

For reversal, appellant says: "It was error not to find for or against one of the parties to the action; it was error to fail to find in response to the issues projected by the pleadings. If the finding was for appellant

and the divorce awarded to her, it was error not to decree her one-third of the appellee's personal property and a one-third interest, for life, in his real property; and it was error to award the appellant the lump sum of $100.00 as alimony."

The trial court found: "That an intolerable situation has grown up or been occasioned by the acts of the parties which makes it practically impossible for the parties to continue their marital relationship or live together again as husband and wife; the defendant has paid to the Clerk in open Court the sum of $80.00 as ordered by the Court at a hearing of this cause on December 8, 1952, to the credit of defendant and in addition thereto, the defendant will pay unto the plaintiff the sum of $100.00 adjusted support, also the sum of $60.00 as attorney's fee for the plaintiff's attorney; and the Court costs. The defendant will not be required to expend or to pay or be liable for any other sum or sums to the plaintiff," decreed that the bond of matrimony existing between Clara Edwards and Joe Edwards "be, and the same is hereby dissolved, set aside and for naught held. It is further ordered by this Court that the defendant and cross-complainant pay unto the plaintiff and cross-defendant the further sum of $100.00 as adjusted support and maintenance for the plaintiff and cross-defendant. It is further ordered that upon the payment of this amount, the cost of this action, and the sum of $60.00 to Jim Merritt, attorney for the plaintiff and cross-defendant, that the defendant and cross-complainant be, and he is hereby released, relieved and not required to pay any further moneys or be liable to the plaintiff and cross-defendant in anywise hereafter, by reason of the marriage as heretofore mentioned in this decree."

The record reflects that both parties had been previously married. Joe Edwards' wife died in 1939. They had reared seven children, giving to each a college education. Appellant also had grown children. During the short time the parties lived together, there was almost constant bickering and quarreling between them. This unhappy situation appeared to stem largely from appel-

lant's demands that appellee give her certain interest in his property. At the time of the marriage, appellee owned a 120 acre farm a few miles from Monticello, which he occupied as his home and appellant was renting a small house in Monticello at a monthly rental of $25.00. Appellee testified that he insisted that Mrs. Edwards move to his home with him on the 120 acre farm but appellant refused to move unless appellee deeded the farm to her.

Witness Lafayette Sawyer, tended to corroborate appellee's testimony. He testified: "Well, Mr. Edwards took me down there, he said well he was going to move his wife out to his place and when we got down there he asked her, told her that he had a truck out there to move her out and she said, 'No, I'm not a-goin' out,' and he said, 'Well, do you mean to say that you're not goin' out there without I deed you my property?' and she said, 'You should do it, it wouldn't be nothing but right,' and he said, 'Well, I'm not a-gonna do that, I just as well get my shaving outfit and go,' and that was all that I heard said. * * * Did you and Mr. Edwards leave then? A. Yes, sir. Walked right on out the door, got in the truck and left.''

Immediately following the marriage, appellant had her lawyer investigate the property holdings of appellee. She testified:

"Q. Do you recall admitting on cross-examination at the other hearing that you did make investigations about Mr. Edwards' property after your marriage? A. I did.

"Q. You also admitted that you requested Mr. Edwards to convey his home to you? A. Well that was on advice from my lawyer. * * *

"Q. Didn't you have a conversation with Mr. Edwards that very morning about moving out there and you told him you wouldn't move until he made the deed to you to the place? A. Well I was just merely testing him out. I didn't have the least idea he would do it except when my lawyer thought we could test him out on it.

"Q. Well you weren't joking about it were you, Mrs. Edwards? A. Well I didn't have the least idea that he would do it.

"Q. You weren't joking with him when he came out to Mr. Sawyer's and you told him you wouldn't move until he made the deed to you. A. I didn't tell him that. I didn't tell him that then."

There was testimony that appellee had strong religious beliefs opposing the marriage of one, who had a divorced spouse living, and the minister, who performed the marriage ceremony, shared appellee's belief and told him before the marriage that he would not perform the ceremony if appellant had a living divorced husband. Appellant had assured appellee that her divorced husband was dead, which was not true.

Appellee testified: "After we were married, after Brother Joe brought it up I just asked her if she had been married another time, how come her not to tell me and she said, 'Well, I didn't count that a marriage, I counted that as if I was living in open adultery all the time I was with old man Walls.'" The record reflects that following this testimony, Mrs. Edwards was again on the witness stand, but she did not deny this testimony of Mr. Edwards.

Many witnesses testified, but no useful purpose would be served in detailing their testimony here. From all of the testimony, it appears to us, that their quarrels and bickerings have gone so far that a reconciliation is unlikely between these people and there appears to be no hope of their ever living together again. It appears to us that appellant's primary purpose in entering into this marriage was to secure property from appellee and that she would not live with him unless she acquired it.

If appellee's testimony is true and is corroborated, we think it sufficient, though somewhat weak, to entitle him to a divorce in the circumstances presented here.

The principles of law announced in *Bell* v. *Bell,* 179 Ark. 171, 14 S. W. 2d 551, apply with equal force here.

There we said: " 'The testimony is not very satisfactory on the question of divorce, but, after considering the whole of the testimony carefully and the situation and condition of the parties, we are of the opinion that the preponderance of the evidence entitles the (plaintiff) to a divorce. It is perfectly apparent from the testimony of both of them that they were continually quarreling with each other, and that there was no likelihood of their becoming reconciled to each other. Each of the parties had children by a former marriage, and there was no hope of them ever living together again. Hence we are of the opinion that a preponderance of the evidence will sustain a decree granting the plaintiff * * * a. divorce from the defendant * * * on the statutory ground of indignities rendering (plaintiff's) condition in life intolerable.' In the present case it may be said that the testimony is not very satisfactory, but, as in the Collins case, each of the parties had been married before and had children by former marriages, and there is no hope of them ever living together again."

The Chancellor, who saw and heard the witnesses, found, as indicated, that an "intolerable situation had grown up" that made it practically impossible for these parties to continue their marital relationship. We cannot say that this finding is against the preponderance of the testimony.

From the court's decree, above, it appears that the court did not by specific words award a divorce to appellee, Joe Edwards; however, since we try the cause *de novo* here, we hold that the preponderance of the evidence warranted a decree of divorce to appellee and that appellant was not entitled to a divorce in the circumstances.

Our rule is well established that pleadings may be amended at any time by the parties, absent objections, and also may be treated as amended to conform to the proof as was done here. (*Pettigrew* v. *Pettigrew,* 172 Ark. 647, 291 S. W. 90.) There was no error, therefore, in the court's action in this regard.

Since was are holding that appellee,—and not appellant,—was entitled to an absolute divorce, then under our well established rule, appellant (having been denied a divorce) was not entitled to alimony as a matter of right or a property settlement under § 34-1214, Ark. Stats. 1947, as argued by appellant. In the circumstances, the allowance of alimony was within the sound discretion of the trial court. "It was in the discretion of the chancellor to allow or disallow the appellant alimony. It was his duty to consider all the circumstances in exercising his discretion, and we cannot say there was an abuse of discretion." *Upchurch* v. *Upchurch*, 196 Ark. 324, 117 S. W. 2d 339.

Modified and affirmed.