The Honorable Bob McMahan Prosecutor Coordinator 323 Center, Suite 750 Little Rock, Arkansas 72201
Dear Mr. McMahan:
This is in response to your request for an opinion concerning the meaning of the words "reside" and "cohabitate" as they are used in the definition of "family or household member" in the following statutes: (1) the Domestic Battering and Assault statutes, A.C.A. § 5-26-301 et seq., (2) the Domestic Abuse Act of 1991, A.C.A. § 9-15-101 et seq., and (3) the warrantless arrest for domestic abuse statute, A.C.A. § 16-81-113. Specifically, you have asked the following questions:
1. What constitutes "residing" together?
 2. Do the above-mentioned domestic abuse statutes protect a person in (or formerly in) an intimate relationship of a sexual nature who is abused by that intimate partner, even if they have never been married or lived together?
While this office cannot provide a conclusive definition of a term in instances where the General Assembly has elected not to include one in legislation, it may reasonably be concluded that "residing together" means to live together in a place for an extended period of time. With regard to your second question, it may reasonably be concluded that in some circumstances the domestic abuse statutes may be invoked to protect a person even though the person was never married to and never lived with the assailant.
Initially, it is necessary to set forth the relevant statutes and the context in which the words in question are found. The purpose of the Domestic Abuse Act of 1991 is to "provide an adequate mechanism whereby the State of Arkansas can protect the general health, welfare, and safety of its citizens by intervening when abuse of a member of a household by another member of a household occurs or is threatened to occur, thus preventing further violence." A.C.A. § 9-15-101. Arkansas Code Annotated § 9-15-103, entitled "Definitions," provides in part:
(a) "Domestic abuse" means:
 (1) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members; or
 (2) Any sexual conduct between family or household members whether minors or adults which constitutes a crime under the laws of this state.
 (b) "Family or household members" means spouses, former spouses, parents and children, persons related by blood within the fourth degree of consanguinity, persons who are presently or in the past have resided or cohabitated together.
Section 16-81-113 provides that a law enforcement officer may arrest a person without a warrant when the officer has probable cause to believe the person has committed acts, within the preceding four hours, which constitute domestic abuse against a "family or household member." The definitions of "domestic abuse" and "family or household member" are nearly identical to those found in A.C.A. § 9-15-103. Finally, A.C.A. §5-26-302, part of the Domestic Battering and Assault statutes, provides that "family or household member" means: "(1) Spouses; (2) Former spouses; (3) Parents; (4) Children; (5)(A) Persons related by blood within the fourth degree of consanguinity. . . .; and (6) Persons who are presently residing or cohabitating or in the past have resided or cohabited together."
With regard to your first question, the term "reside" is not defined in the foregoing statutes. Although I cannot supply a definition where the legislature has elected not to do so, under established rules of statutory construction, it will always be presumed in the absence of a controlling definition that the legislature intended to use words in their ordinary and usually accepted meaning. See Op. Att'y Gen. 95-413;Hice v. State, 268 Ark. 57, 593 S.W.2d 169 (1980). Applying this precept, a court would likely conclude that "reside" means "to live in a place for an extended or permanent period of time." See The American Heritage Dictionary Second College Edition (1985); see also Black's Law Dictionary (6th ed. 1990) (reside means to live, dwell, abide, sojourn, stay, remain, lodge; to remain or stay, to dwell permanently or continuously); Grayer v. State, 234 Ark. 548, 353 S.W.2d 148 (1962) (citing Black's Law Dictionary to state "reside" means live, dwell, abide, sojourn, stay, remain, lodge). Thus, it may reasonably be concluded that "residing together" means to live together in a place for an extended period of time.
In order to answer your second question, the definition of "cohabitate" must be examined. Again, I cannot supply a controlling definition where the legislature has elected not to do so. The American Heritage Dictionary Second College Edition defines the word "cohabitate" to mean "to live together as husband and wife" or "to live together in a sexual relationship when not legally married." Although both of these definitions contemplate the parties living together, you have noted in your letter that the Arkansas Supreme Court has stated that the word "cohabitate" in its popular sense simply means "sexual intercourse."McClure v. McClure, 205 Ark. 1032, 172 S.W.2d 243 (1943); see also Rossv. Ross, 213 Ark. 742, 213 S.W.2d 360 (1948); Varnell v. Varnell,207 Ark. 711, 182 S.W.2d 466 (1944). Each of these cases involved a divorce proceeding, and the issue was whether the husband and wife had "lived separate and apart from the other for three consecutive years, without cohabitation,. . . ." The court noted that the strict definition of "cohabitation" is "living together in the same abode," but the popular definition is "sexual intercourse." The court concluded that in the statute under construction, the legislature intended to use the more "popular" definition.
In the instant case, it appears that the legislature intended for "cohabitate" as used in the definition of the phrase "family or household member" to mean more than isolated acts of sexual intercourse. The references to household member in the statutes you have cited and the purpose provision of the Domestic Abuse Act contemplate some permanency to the relationship; however, to conclude that cohabitate simply means the parties are "living together in the same abode" would render the term superfluous because "reside" also means to live together.[1]
In the course of interpreting the Ohio domestic abuse statutes, the Ohio Supreme Court has stated that domestic violence arises out of the nature of the relationship itself, rather than the exact living circumstances of the victim and the perpetrator. Ohio v. Williams, 683 N.E.2d 1126 (Ohio 1997). The court concluded that the essential elements of cohabitation are (1) sharing of familial or financial responsibilities and (2) consortium. See also Hicks v. Hicks, 405 So.2d 31 (Ala.Civ.App. 1981) (with regard to termination of alimony, cohabitation requires proof of some permanency of relationship, along with more than occasional sexual activity). Similarly, in our domestic abuse statutes, it is likely that the legislature intended for "cohabitate" to mean more than isolated acts of sexual intercourse, but not necessarily "residing together." But cf.
Cal. Fam. Code § 6209 (cohabitant means a person who regularly resides in the household); Md. Fam. Law. Code Ann. § 4-501 (cohabitant means a person who has had a sexual relationship with the respondent and resided with the respondent in the home for a period of at least 90 days within 1 year before filing of the petition). Thus, while judicial or legislative clarification may be necessary to definitively resolve this issue, it may reasonably be concluded that in some circumstances the domestic abuse statutes may be invoked to protect a person even though the person was never married to and never lived with the assailant. Whether the statutes may be invoked in a particular case requires a factual determination which is, of course, beyond the scope of an Attorney General opinion.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] A statute should be construed to give meaning and effect to every word therein if possible. Locke v. Cook, 245 Ark. 787, 434 S.W.2d 598
(1968). Further, although penal statutes are given a strict construction, the rule is not so rigid that it does not give way to the obvious legislative intent or bow to the plain policy and purposes of the statute. Ashing v. State, 288 Ark. 75, 702 S.W.2d 20 (1986).