OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

April 4, 2001

The Honorable David Sibley
Chair, Business and Commerce Committee
Texas State Senate
P. O. Box 12068
Austin, Texas 78711

Opinion No. JC-0362

Re: Whether the City of Port Arthur Economic Development Corporation may "grant" sales tax funds for a "rehabilitation and job training/educational facility" (RQ-0288-JC)

Dear Senator Sibley:

As an industrial development corporation established under section 4A of the Development Corporation Act of 1979 (the "Act"), the City of Port Arthur Economic Development Corporation (the "Corporation") may expend sales and use tax proceeds to finance the cost of authorized projects, which include, generally, facilities that promote business development and, more specifically, job training. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6 (Vernon 1987 & Supp. 2001). The Port Cities Rescue Mission (the "Mission"), a nonprofit organization established to provide shelter to needy persons, rehabilitates substance abusers, trains them in skills that will enable them to obtain employment, and places them in jobs at various companies.[1] You ask whether the Corporation is authorized to make a "grant" of section 4A tax revenues to the Mission for "a rehabilitation and job training/educational facility." *See* Request Letter, note 1, at 1. We conclude that the Corporation is authorized to expend section 4A tax revenues to finance such a facility only if the Corporation's board of directors reasonably finds that the facility will promote business development. Any such expenditure must be made pursuant to a contract or other arrangement which ensures that the funds will be used for the authorized purpose and otherwise be in compliance with the Act.

The Mission, you inform us, has implemented the "Lazarus Project," which is a "a two-step process in which [hardened substance abusers ready to change] live in two separate facilities, are constantly monitored, have varying degrees of privileges and, subsequently, are placed into employment while still living in the facility." The project has successfully "placed twenty-two Port Arthur residents in gainful employment." *Id.* at 1-2. While your letter suggests that the Mission "creates" jobs, it appears that the Mission's role is limited to placing individuals in available jobs with local employers.[2] *See id.* The Corporation would like to enter into a contract with the Mission with respect to the Lazarus Project "for $51,500 to purchase a building, equipment, and supplies to

---

[1] *See* Letter from Honorable David Sibley, Texas State Senator, to Honorable John Cornyn, Attorney General of Texas (Sept. 26, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

[2] Telephone Conversation with Mark Sokolow, Port Arthur City Attorney (Dec. 21, 2000).

provide clients with skills which will enable them to actively seek, obtain, and retain productive employment." *Id.* at 2. Because you are concerned with whether the expenditure "would be in accordance with requirements and limitations set forth in Section 4A," *id.*, we presume that you ask about the Corporation's authority to use section 4A tax proceeds to pay for the Mission's facility as an authorized "project" under the Act.

In addressing your question, we assume that there are no limitations on the expenditure of the section 4A tax proceeds particular to the Corporation. The authority of a particular development corporation may be limited by the resolution creating the corporation or ballot language restricting the use of the section 4A tax. *See, e.g.,* TEX. REV. CIV. STAT. ANN. art. 5190.6 §§ 4(a) (Vernon Supp. 2001) (resolution creating corporation must specify its purpose); 4A(n) (election on imposition of tax may limit time tax is imposed); 4A(r) (election on imposition of tax may limit use of tax proceeds to specific projects). It may also be limited by financing documents relating to the corporation's bonds. *See, e.g., id.* §§ 4A(f) (tax proceeds may be pledged to bond debt service); 25(e) (pledge or agreement to secure bonds in effect until bonds are fully paid). In addition, we do not address the authority of the Corporation to expend funds other than the section 4A tax proceeds. Lastly, you do not tell us and we do not address the possible non-secular nature of the Lazarus Project and the issues that may be implicated by the expenditure of public funds for such a project to the extent it is non-secular.

We begin our analysis of your question with a brief review of the somewhat byzantine provisions of the Act. The Act generally authorizes a city, county, or a district to create an industrial development corporation to finance the cost of authorized projects that "promote and develop new and expanded business enterprises to promote and encourage employment and the public welfare." *See id.* §§ 2(13); 21; 23(a)(1)-(7); *see also id.* § 2(4) (defining "cost"); (11) (defining "project"). In particular, section 4A of the Act authorizes a qualifying city to create an industrial development corporation governed by that section, *see id.* § 4A(b)(1), and authorizes the city to levy a sales and use tax for the benefit of that corporation, *see id.* § 4A(d). The tax is approved by the voters "for the promotion and development of new and expanded business enterprises," *id.* § 4A(m), and the proceeds delivered to the corporation "to use in carrying out its functions." *Id.* § 4A(f). The tax proceeds may be used to finance authorized project costs. *See id.* §§ 4A(f); 21; 23(a)(6). *But see Gaut v. Amarillo Econ. Dev. Corp.,* 921 S.W.2d 884, 887 (Tex. App.–Austin 1996, no writ) (section 4A development corporation is not limited to "projects"). They "may *also* be used to pay expenses incurred by the corporation under Section 38 of [the] Act relating to job training." TEX. REV. CIV. STAT. ANN. art. 5190.6, § 4A(f) (Vernon Supp. 2001) (emphasis added).

The section 4A terms "project" and "job training expenses" are defined and expanded upon by other provisions of the Act. Section 2(11) of the Act defines "project" and includes two definitions related to job training. It first defines "project" as "land, buildings, equipment, facilities, targeted infrastructure, and improvements (one or more) to promote new and expanded business development or found by the board of directors to be required or suitable for the promotion of development and expansion of . . . job creation and retention, job training, [or] educational facilities . . . ." *Id.* § 2(11)(A); *see also id.* § 2(4) (providing that "[c]ost as applied to a project shall mean and

embrace the cost of acquisition, [and] construction . . . , including . . . the cost of all machinery and equipment, . . . and other supplies"). Separately, section 2(11) provides that "'[p]roject' *also* includes job training required or suitable for the promotion of development and expansion of business enterprises and other enterprises described by this Act, as provided by Section 38 of this Act." *Id.* § 2(11)(A) (emphasis added).

Section 38 allows a development corporation to expend tax proceeds for job training, provided certain conditions are met:

> (b) Except as provided by Subsection (c) of this section, a corporation may spend tax revenue received under this Act for job training offered through a business enterprise only if the business enterprise has committed in writing to create new jobs that pay at least the average weekly wage[3] for the county in which the jobs are to be located.

> (c) In a county in which the unemployment rate for the preceding calendar year equals or exceeds 1.5 times the state average unemployment rate for the preceding calendar year, a corporation may spend tax revenue received under this Act for job training offered through a business enterprise only if the business enterprise has committed in writing to create new jobs that pay at least 90 percent of the average weekly wage for the county in which the jobs are to be located.

> (d) A corporation may not spend tax revenue received under this Act for job training in an amount that exceeds more than one-half the actual cost of the job training.

> (e) Unless the project is located in a county in which the unemployment rate for the preceding calendar year equals or exceeds 1.5 times the state average unemployment rate for the preceding calendar year, a corporation may not spend tax revenue received under this Act for job training if other state or federal funds dedicated to job training are used in the project.

*See id.* § 38(b), (c), (d), (e) (footnote added).

The section 38 requirements, in our opinion, are limited to sales tax expenditures for job training classes. A section 4A corporation is authorized to use sales tax proceeds to finance the cost

---

[3]In section 38, "'average weekly wage' has the meaning defined by the labor market information division of the Texas Workforce Commission." *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 38(a) (Vernon Supp. 2001).

of a "project." *See id.* §§ 4A(f); 23(a)(1), (6). "Project" is defined to include a *facility* promoting job training *and* job training expenses. *See id.* § 2(11) (emphasis added). The facility definition of project does not reference section 38. *See id.* And the section 4A provision specifically authorizing use of the tax proceeds to "pay expenses incurred by the corporation under Section 38 of [the] Act relating to job training[,]" by its terms, does not relate to a facility. *See id.* § 4A(f). Moreover, section 38, by its terms, does not apply to a facility. Rather, it applies to a sales tax expenditure for "job training offered through a business enterprise" or, in other words, job training courses or programs. *See id.* § 38(b).[4]

The section 4A and section 2(11) requirement that a project promote business development, in our opinion, applies to both types of job training projects. As discussed earlier, section 2(11) expressly defines a "project" to include facilities "to promote new and expanded business development or found by the board of directors to be required or suitable for the promotion of development and expansion of . . . job creation and retention, job training," and "job training required or suitable for the promotion of development and expansion of business enterprises." *Id* § 2(11); *see also id.* § 38 (requiring "business enterprise" to commit in writing to create new jobs as a condition to sales tax expenditure for job training). More importantly, the section 4A sales and use tax is authorized, approved, and levied only "for the promotion and development of new and expanded business enterprises." *See id.* § 4A(m). In an election to adopt the tax, section 4A(m) specifically directs that the "the ballot shall be printed to provide for voting for or against the proposition: 'The adoption of a sales and use tax for the promotion and development of new and expanded business enterprises at the rate of _____ of one percent.'" *Id.* § 4A(m). Tax proceeds, of course, may be used only for the purpose authorized by the legislature and approved by the voters. *See Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 948 (Tex. 1940) (taxing power may be exercised only for purposes distinctly included in constitutional or legislative provision); *Robbins v. Limestone County*, 268 S.W. 915, 919 (Tex. 1925) (taxes levied and collected for particular purpose may not be diverted to purposes other than for which they were voted). Thus, use of the section 4A tax proceeds is limited to projects that promote business development.

In sum, section 4A tax proceeds may be expended to finance the cost of a "project." A "project" includes: (1) job training facilities, or (2) job training expenses. The section 38 requirements — that tax proceeds may be used to pay up to one-half of the cost of job training only if a business enterprise has committed to creating new jobs that pay at least the "average weekly wage for the county" or ninety percent of that wage in a high unemployment county and no other state or federal funds are used for such purpose except in a high unemployment county — do not

---

[4]*See also* HOUSE COMM. ON ECON. DEV., BILL ANALYSIS, Tex. H.B. 1916, 76th Leg., R.S. (1999) ("Worker training is a major issue for companies wishing to relocate to Texas[,] and some economic development corporations would like to be able to offer [these] companies funds for job training to make relocating more attractive to those companies. The ability to use economic development tax money for job training could be a spur to economic development in areas with an acute shortage of trained workers."); *Hearings on Tex. H.B. 1916 Before the House Comm. on Econ. Dev.*, 76th Leg., R.S. (Mar. 22, 1999) (statement of Rep. Oliveira, sponsor of legislation enacting section 38: "The bill would amend section 4A to allow sales tax revenues . . . to be used to pay for the expense incurred by a business that wants to get certain job training done.") (audio tape available from House Video/Audio Services).

apply to the first type of a project, *i.e.*, a job training facility. Both job training project types, however, must promote business development.

You ask about the use of the section 4A tax proceeds for the Mission's "rehabilitation and job training/educational facility." *See* Request Letter, *supra* note 1, at 1. The funds will be used to purchase a "building, equipment, and supplies," that will be used for job training, *i.e.*, a job training facility. *See id.* at 1-2. Thus, section 38 does not apply. But we must determine whether this facility is an authorized facility project of the first kind.[5] We conclude that it is an authorized facility project only if it promotes business development. While we think it unlikely that the facility directly promotes business development, we cannot say as a matter of law that it does not.

The facility in question would appear to promote social rehabilitation, given your description of the facility ("rehabilitation and job training/educational facility") and the purpose ("provide shelter") and operation ("rehabilitate substance abusers") of the Mission. *See id.* ("Lazarus Project," is a "a two-step process in which [hardened substance abusers ready to change] live in two separate facilities, are constantly monitored, have varying degrees of privileges, and, subsequently, are placed into employment while still living in the facility."). While rehabilitation of habitual substance abusers clearly promotes societal well-being, we think it unlikely that it directly promotes business development by, for example, creating or attracting additional jobs, as required by the Act and as contemplated by the voters when they approved the section 4A tax for that purpose.

But the determination of whether a particular project will promote the economic development purposes of the Act is, in general, a question of fact within the discretion of the board of directors of the development corporation in the first instance, subject to judicial review for abuse of discretion. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 2(11) (Vernon Supp. 2001); Tex. Att'y Gen. LO-95-072, at 3 (determination whether section 4B development corporation may construct sanitary sewer lines in existing residential subdivision must be made by board of directors in first instance subject to review for abuse of discretion); LO-92-086, at 2 (concluding that it was within discretion of section 4A development corporation in first instance to characterize use of sales tax proceeds to finance bonds for Texas State Technical College System extension center as promotion of commercial or economic development given statute governing such centers). *But see* Tex. Att'y Gen. LO-97-061 (concluding that based on information provided, board of directors had no basis for determining that expenditure of sales tax proceeds to support Clarendon College would promote economic development). Here we cannot say as a matter of law that the Corporation's board of directors would have no basis for determining that a facility described to us as a "rehabilitation and job training/educational facility" promotes business development. *Cf.* Tex. Att'y Gen. LO-97-061. Accordingly, the Corporation may expend section 4A tax proceeds to finance a "rehabilitation and job training/educational facility" if its board of directors finds that such a facility promotes business development. The board's determination must, of course, be reasonable in that it is supported by facts. *See id.* at 3 n.7 ("Clearly, the determination that an expenditure is within the purposes of the

---

[5] Notwithstanding the characterization of the Mission's facility, we do not believe that it is an "educational facility" as those terms are commonly used and understood.

act must be supported by the facts."); Tex. Att'y Gen. LO-95-072 (board's determination subject to review for abuse of discretion). Additionally, the expenditure must comply with other applicable requirements of the Act.

Finally, we note that you ask whether the Corporation is authorized "to provide a grant" to the Mission for the "rehabilitation and job training/educational facility," although you also indicate that the expenditure will be pursuant to a contract. Because we are unclear as to how the expenditure will be made, we briefly address this issue. The Act gives a development corporation broad authority to contract with a "user" of a "project" to finance the project. *See* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 23(a)(1)-(5) (Vernon Supp. 2001). The term "user" includes a private, nonprofit entity, such as the Mission. *See id.* § 2(15). But no provision in the Act expressly authorizes a development corporation to make a "grant." *See id.* § 23; Tex. Att'y Gen LO-94-037, at 3 ("[W]e find no provision in section 4A or elsewhere in the act . . . by which the legislature has specifically authorized development corporations formed thereunder to make 'grants.'"); *see also* Tex. Att'y Gen. Op. No. JC-0118 (1999) at 8-9 (Act does not authorize gift or donation of sales tax proceeds; sales tax expenditures even for project costs must be pursuant to a contract). *But see* TEX. REV. CIV. STAT. ANN. art. 5190.6, § 23(a)(4) (Vernon Supp. 2001) (1999 amendment authorizing development corporation to "donate" property to an institution of higher education "for a legal purpose of the institution upon such terms and conditions as the corporation's board of directors may deem advisable and that are not in conflict with the provisions of this Act."). We have previously stated that any expenditures of sales tax funds, including those for authorized projects, must be made pursuant to a contract or other arrangement sufficient to ensure that the funds are used for the purposes authorized, consistent with the constitutional restrictions on the expenditure of public funds and the requirements of the Act. *See* TEX. CONST. art. III, § 52; Tex. Att'y Gen. Op. No. JC-0118 (1999) at 8-9; Tex. Att'y Gen. LO-97-061, at 4-5, LO-94-037, at 3. Consequently, any sales tax expenditure for the Mission's "rehabilitation and job training/educational facility" must be made pursuant to a contract or other arrangement that ensures that the funds will be used for the authorized purpose and in compliance with the Act.

## S U M M A R Y

The City of Port Arthur Economic Development Corporation is authorized to expend sales and use tax proceeds to finance the Port Cities Rescue Mission's "rehabilitation and job training/educational facility" only if the Corporation's board of directors reasonably finds that such a facility promotes business development and otherwise complies with the Development Corporation Act of 1979, article 5190.6 of the Revised Civil Statutes. The Act does not expressly authorize a "grant" for the Mission's facility. Instead, any sales tax expenditure for such a facility must be made pursuant to a contract or other arrangement that ensures that the funds will be used for the authorized purpose and otherwise be in compliance with the Act.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee