### Bobbie BOWERS *v.* Richard W. BOWERS, Gary C. BOWERS

74-110                                               514 S.W. 2d 387

**Opinion delivered October 14, 1974**
[Rehearing denied November 18, 1974.]

*Camp, Thornton & Griggs,* for appellant.

*McKay, Chandler & Choate,* P.A., and *Woodward & Kinard,* Ltd., for appellees.

CONLEY BYRD, Justice. The issues here involved arise out of a divorce action between appellant Bobbie Bowers and appellee Richard W. Bowers. Appellee Gary C. Bowers, the son of Richard Bowers, was brought into the action by appellant to set aside an alleged gift to him of the machine shop business known as Bowers Debarking Tools, Inc. The trial court denied a divorce to both appellant and appellee Richard Bowers and dismissed the third party complaint against Gary Bowers for want of equity. In addition the trial court awarded appellant support money in the amount of $300 per month and a total attorney's fee of $1,000. Appellant has appealed and for reversal makes the contentions hereinafter discussed.

The record shows that both Bobbie Bowers and Richard Bowers had previously been married. Bobbie's first husband Kelly Lewis was superintendent of the Magnolia Water works. He died with a heart attack in 1964. Richard Bowers' former wife was killed in a car-train collision in 1964. Mr. Bowers, the driver of the car, also received some injuries. Mrs. Bowers has only one child, Michael Lewis and Mr. Bowers had only one child, appellee Gary C. Bowers.

When Mr. and Mrs. Bowers married in 1966, they moved into the rented house in Waldo where Mr. Bowers had lived since 1954. Mr. Bowers had operated a machine and welding shop in a garage on the back of the rented property. After the marriage Mr. Bowers continued to operate the

machine and welding shop. After the marriage Mrs. Bowers assisted in the operation of the business by doing some painting, running some errands and answering the phone. According to the income tax returns the annual income of the machine shop did not exceed $5,031.56 until 1971, when it climbed to $18,035.00. The record shows that Gary Bowers joined the business in April or May of 1972, and that the business was incorporated on August 4, 1972. On that date all of the shares of stock in Bowers Debarking Tools, Inc., were assigned to Gary.

The record shows that Gary grew up in his father's machine shop. When he was inducted into the navy, he was promoted to 3rd class machinist, because of certain aptitude tests. Gary graduated from Baylor University Law School in 1963 and was admitted to the practice of law in the State of Texas. Following the death of his mother, Gary returned to Waldo and helped his father in the machine shop until 1965, when his father recuperated to the point that he could run the shop by himself. Gary had a private law office in Houston, Texas, until he closed it down to return to Waldo in 1972.

POINTS I and II. Under these points appellant contends that she was entitled to a directed verdict of divorce and a divorce on her counterclaim. The thrust of appellant's argument is that since appellee Richard Bowers testified that appellant was a homosexual and did not corroborate the charge she is entitled to a divorce under the doctrine set forth in *Relaford* v. *Relaford*, 235 Ark. 325, 359 S.W. 2d 801 (1962). The doctrine set forth in the *Relaford* case is as follows:

> "It has been repeatedly held by us that the husband's making of an unfounded charge of lascivious conduct against an innocent wife is in itself evidence of and constitutes cruel and inhuman treatment within the meaning of the statute, entitling the wife to divorce, except where the charge is made, not maliciously but in good faith, upon reasonable grounds for believing it, even though held untrue. (citing cases) Also, we have held that accusations in pleading of spouse as to improper conduct of the other spouse, where not supported by such evidence as to imply good faith, constitutes cruel a n d inhuman treatment where false and malicious. * * * "

Thus before appellant can rely upon the *Relaford* case it must appear that Richard Bowers was not in good faith when he testified.

The proof shows that a year or two before the separation in February 1973, a school teacher, some 26 or 27 years of age, who lived in Junction City, Arkansas, but was teaching school at Waldo, started spending all of her spare time with appellant. Richard Bowers testified that the teacher was over there after school, at night and stayed there at night when he went out of town. Marie Harris testified that the teacher came to appellant's house every day as soon as school was out and stayed until bed time. On nights when Mr. Bowers was out of town the teacher would spend the night. Before the temporary hearing the teacher parked her car at appellant's house when she came. After the temporary hearing the teacher continued to visit appellant but parked her automobile at the home of a relative.

During the presentation of his side of the evidence appellee Richard Bowers at one place testified he left when he found out two nights before his separation that appellant was a sex deviate. At one other place he used the term "homosexual". After appellant had testified there was no problem in the marriage relating to sexual matters, Richard Bowers, in rebuttal, testified that on the two nights before their separation, appellant wanted him to participate in some oral sex acts. He also explained that his impression of a "homosexual" is the participation in an unnatural sex act. He further stated that he didn't know whether there was anything wrong or unnatural with the relationship between the teacher and appellant.

Appellant quotes the dictionary definition of a "homosexual" and contends that since Mr. Bowers did not corroborate the charges he made, she is entitlted to a divorce. Underlying this contention is appellant's supposition that the proof relative to the teacher was only for the purpose of corroborating Mr. Bowers' sexual charges. We do not necessarily agree on either contention. The proof as to the teacher also tended to substantiate Mr. Bowers' assertions of appellant's indifferent attitude toward him. His only real assertion in the matter is that the woman was there "too often". Furthermore, we do not go so far under the theory set forth in *Relaford* v. *Relaford, supra,* as to hold that a spouse is entitled to a

divorce whenever such charges are not corroborated. On the record here we cannot say that Mr. Bowers' testimony relative to the unnatural sex acts was not in good faith.

Appellant also contends that she was entitled to a divorce because Mr. Bowers abandoned her without cause; caused certain utilities to be cut off; and refused money for support, etc. These were fact issues before the chancellor and we have been shown no evidence whereby the chancellor abused his discretion in refusing to grant appellant a divorce. Furthermore, appellant's testimony leaves some doubt as to whether she desires a divorce.

POINT III. Appellant contends that the trial court should have set aside the transfer of the machine shop business to Gary Bowers. We find no merit in the many contentions made. In the first place the record shows that Mr. Bowers had been operating this business in the same place since 1954. Thus, the contention that the business was accumulated through their joint efforts is not supported by the record. In the next place the business was transferred to a corporation and the corporation is not a party to this proceeding. Furthermore, in the absence of a showing of any interest in the business other than inchoate dower rights, appellant is not entitled to a property division until such time as a divorce is granted.

POINT IV. The trial court awarded a fee of $300 to appellant's counsel at the temporary hearing and an additional $700 in the final decree. Appellant now contends that she was entitled to a $5,000 fee and that the fee should be assessed against both Richard Bowers and his son Gary Bowers. The matter of allowance of attorney's fees in divorce cases is a matter over which the trial court has considerable discretion and on the record before us we cannot say that the chancellor abused his discretion in awarding only $1,000 for the services of her attorney in the trial court. Furthermore, Gary Bowers, the son, would not be personally responsible for the fees to be allowed in the divorce case.

Affirmed with an additional attorney's fee of $1,000 being awarded to appellant as against Richard Bowers for the services of her attorney on appeal.

HARRIS, C.J., concurs.